**WHELAN ASSOCIATES, INC.**

v.

**JASLOW DENTAL
LABORATORY, INC., et al.**

Civ. A. No. 83–4583.

United States District Court,
E.D. Pennsylvania.

Jan. 22, 1985.

Joel S. Goldhammer, Seidel, Gonda, Goldhammer, P.C., Philadelphia, Pa., Irwin S. Rubin, Rubin, Glickman & Steinberg, P.C., Souderton, Pa., for plaintiff.

Manny D. Pokotilow, Caesar, Rivise, Bernstein & Cohen, Ltd., Richard M. Bockol, Philadelphia, Pa., for defendant.

OPINION AND ORDER

VANARTSDALEN, District Judge.

### A. FINDINGS OF FACT

1. Whelan Associates, Inc. (Whelan Associates) is a Pennsylvania corporation, in-

corporated and organized in 1979 by Elaine P. Whelan, who is the president and a director and controlling stockholder of Whelan Associates. The main business of Whelan Associates is designing and marketing custom computer applications. Insofar as relevant to this case, Whelan Associates is in the business of designing and marketing computer software programs for use in the business operations of dental laboratories.

2. Whelan Associates claims that it is the sole and exclusive owner of a computer software program which it has named the Dentalab System. The Dentalab System was designed for the IBM-Series 1 Computer and written in EDL computer language. It was later written for the IBM-Datamaster Computer in BASIC computer language. For all practical purposes the Datamaster Dentalab System is no longer being marketed due to lack of interest by the dental laboratory industry with utilizing the IBM-Datamaster computer. Whelan Associates has more recently developed a Dentalab system for use with the IBM–PC Computer, a smaller, more inexpensive personal computer, suitable for use with dental laboratories employing 25 or fewer employees. Whelan Associates claims ownership to registered copyrights to the Dentalab Computer programs and a related Installation Guide and a User Manual.

3. Plaintiff claims that the defendants have wilfully infringed upon plaintiff's copyrights, engaged in unfair competition and tortiously interfered with existing and prospective contractual relations. Plaintiff claims that defendants have wrongfully marketed the Dentalab System for the IBM-Series 1 Computer including marketing of maintenance agreements for previously sold systems. Plaintiff further claims that defendants wrongfully developed and are marketing an infringing software system for use with an IBM–PC Computer under the trade name Dentlab.

4. Elaine Whelan is an experienced computer programmer, analyst and systems designer. In 1978 she was owner of one-half of the corporate stock of Strohl Systems

Group, Inc. (Strohl Systems). Myles Strohl was the owner of the other half of the stock. Strohl Systems, at that time, was in the business of designing custom computer software programs.

5. Jaslow Dental Laboratory, Inc. (Jaslow Laboratory) was in the business of operating a successful dental laboratory. Edward Jaslow, the father of Rand Jaslow, was the president. Rand Jaslow was an officer and stockholder of Jaslow Laboratory. During 1978, Rand Jaslow attempted to develop a computer program for various business operations of Jaslow Laboratory such as registering receipt of orders; processing orders; maintaining inventory, cost controls, and customer lists; performing invoicing, billing and accounting functions; and performing other related functions and services. Rand Jaslow had no experience or formal training in computers or in computer programming and systems design. He had purchased from Radio Shack a small, relatively inexpensive computer, a TRS–80, that had no printer and limited capacity. Rand Jaslow was unsuccessful in developing a computer program that would be useful in the operation of Jaslow Laboratory.

6. Rand Jaslow eventually had communications with Strohl Systems concerning Strohl Systems creating a workable computer system for Jaslow Laboratory. By letter dated August 31, 1978 (Exhibit J–1) Strohl Systems submitted a written proposal to Jaslow Laboratory to design and implement a computer software system for Jaslow Laboratory. The proposal outlined the general scope of the functions to be included in the design, the methods by which the design would be developed (including a description of the work to be done, such as preparation and delivery of the system together with instructions), a time schedule for completion, and the charges to be made for the services. Strohl Systems was to receive a fee of $18,000 to design the system plus certain expenses. The system was to be designed for use with an IBM-Series 1 computer which Jaslow Laboratory was to acquire,

either by lease or purchase at its own expense. Elaine Whelan was designated in the proposal as the person who would "lead the Strohl Systems team."

7. The proposal of August 31, 1978 was supplemented by a letter dated September 30, 1978 from Strohl Systems to Jaslow Laboratory (Exhibit J-2). The letter stated as follows:

This communication is a supplement to our proposal letter dated 8/31/78.

We propose that all software developed by us for your dental laboratory system remain under our ownership. This basic system can then be marketed to similar laboratories by our organization. A royalty of ten percent of the basic package price would be returned to Jaslow Dental Laboratory for each system sold. Modifications to the system would be sold separately with all proceeds to our organization.

If the above points of agreement are acceptable, would you please sign and return the enclosed copy.

8. The proposal as set forth in the letters of August 31 and September 30, 1978 was accepted by Jaslow Laboratory, although never acknowledged in writing. Pursuant to the agreement, Strohl Systems designed and installed a software computer system for use by Jaslow Laboratory on the IBM-Series 1 Computer. The system was installed and placed in operation in Jaslow Laboratory's place of business.

9. At all times, the designing of the computer system was under the direct supervision and control of Elaine Whelan, and it was she who actually designed the system. In performing this task, she conferred extensively with Rand Jaslow as to the operation of the business of Jaslow Laboratory. In the process she learned the methods used by Jaslow Laboratory in receiving, processing and delivering orders, invoicing, billing, controlling inventory, accounting and, in substance, the detailed manner in which Jaslow Laboratory conducted its business, other than the actual manufacturing processes used in filling orders. She also conferred with Rand Jaslow and other employees of Jaslow Laboratory as to features, capabilities and functions of the computer that would be desirable and useful in operating the business. In addition, she did a substantial amount of independent study and research as to the methods of operation of other dental laboratories in order to design a system that would be readily adaptable to other laboratories.

10. The computer program designed and originally developed for Jaslow Laboratory was written in Event Driven Language (EDL), a recognized form of computer language. Computer language is the method used to write the source code for a computer program. In designing this program, both Strohl Systems and Jaslow Laboratory intended and understood from the outset that the system would be designed so that it could be readily used and adapted by a skilled computer programmer for dental laboratories throughout the industry. It was contemplated that after developing a satisfactory system, Strohl Systems would market the system to other dental laboratories. Both Strohl Systems and Jaslow Laboratory knew that the operation of dental laboratories was substantially the same throughout the industry and that it would be quite feasible to adapt the system that would be developed for Jaslow Laboratory to many other dental laboratories.

11. The agreement (Exhibit J-2) expressly provided that "all software developed" by Strohl Systems for Jaslow Laboratory was to "remain under our [Strohl Systems'] ownership", and the "basic system" was then to be marketed by Strohl Systems. Jaslow Laboratory was the pilot program. Jaslow Laboratory agreed to make its computer available for demonstration purposes. As compensation for such demonstrations and for the information provided as to the operation of dental laboratories, Jaslow Laboratory was to receive a commission of 10% of the basic package price of any additional systems sold to other dental laboratories. Modifications to the basic system as originally developed for Jaslow Laboratory were to be sold separately by Strohl Systems and Jaslow Labo-

ratory was to receive no part of the proceeds from such sales. (Exhibit J–2)

12. The system became operational for Jaslow Laboratory around March, 1979. As Rand Jaslow and other personnel of Jaslow Laboratory became familiar with the operation, modifications and enhancements were suggested and requested. Strohl Systems, through Elaine Whalen, made various enhancements and modifications between March and October, 1979. Strohl Systems, through Elaine Whelan, for these changes, and Jaslow Laboratory paid such charges.

13. In 1979, Strohl Systems commenced marketing the system it had developed. In so doing, it used the trade name of "Dentalab". The name was not registered as a trade name or trademark.

14. An agreement dated November 15, 1979 between Myles Strohl and Elaine Whelan and Strohl Systems separated the interests of Myles Strohl and Elaine Whelan in Strohl Systems. Under the agreement (Exhibit J–25), Elaine Whelan sold her entire interest in Strohl Systems. In return, she was granted permission to market the dental laboratory computer program under the name Dentalab. Myles Strohl and Strohl Systems agreed that they would refrain from engaging in any way in marketing computer programs for dental laboratories for a period of two years.

15. An agreement dated August 19, 1983 between Myles Strohl and Elaine Whelan and Strohl Systems (Exhibit J–26) supplemented the agreement of November 15, 1979 between the parties. The preamble of the August 17, 1983 agreement provides:

A. The parties previously entered into a written Agreement dated November 15, 1979, which Agreement is hereby incorporated by reference as if set forth *in extenso*.

B. In said Agreement [Elaine P.] Whelan received the ownership (source code, etc.) of a certain computer software program for use by dental laboratories, which program was designed and made by Whelan during her period of service for SSG [Strohl Systems]. Under the Agreement, SSG and [Myles L.] Strohl were given the non-exclusive right to market the said computer software program beginning November 15, 1981.

C. SSG and Strohl have made no marketing effort relating to this program; have not assigned such marketing rights to anyone; and now desire to surrender and terminate such marketing rights.

D. It is the purpose of this writing formally to carry out the intentions of the parties.

By the terms of the Agreement Strohl Systems and Myles L. Strohl surrendered and terminated all of their marketing rights under the Agreement of November 15, 1979 and all marketing rights to the computer software program for dental laboratories. The Agreement contained mutual releases. Elaine Whelan paid $2,500 in full consideration for the Agreement. She thus acquired all remaining rights of Strohl Systems to the computer program.

16. A separate agreement between the same parties also dated August 19, 1983 assigned, granted and sold to Elaine Whelan all of the right, title and interest of Myles L. Strohl and Strohl Systems in and to the computer software programs known as the "Dentalab Package," which expressly included all related technical sales and operating manuals, advertising materials, program source codes, flow charts and related material as well as all copyright entitlements and claims of past copyright infringements. The assignment recited that Elaine Whelan had "designed and developed a series of computer software programs known as a Dentalab Package." (Exhibit J–27).

17. Elaine Whelan formed Whelan Associates, Inc. (Whelan Associates) in November, 1979, as a corporation to market the dental laboratory software computer program under the trade name of Dentalab. All of the right, title and interest that she had in "Dentalab" was assigned to Whelan Associates, but no writing acknowledging such assignment was made until a writing dated September 27, 1983,

which asserted it was effective as of November 30, 1979, "nunc pro tunc." That writing (Exhibit P–65) constituted an assignment of copyrights including the right to sue for past infringements.

18. Whelan Associates filed four copyright registrations for the dental laboratory software computer program, including enhancements and an installation guide and a user's manual.

1. Exhibit P–103:   Registration TXU–131–586
   Effective Date:   8/16/83
   Title of Work:   DENTAL LAB FOR IBM SERIES 1
   Nature:  Author of entire computer program text.

2. Exhibit P–104:   Registration TXU–139–595
   Effective Date:   11/7/83
   Title of Work:   DENTAL LAB FOR IBM SERIES 1
   Nature:  Computer program text.

3. Exhibit P–105:   Registration TXU–139–614
   Effective Date:   10/24/83
   Title of Work:   DENTAL LAB INSTALLATION GUIDE
   Nature:  Manual for implementation and installation of computerized system
            for Dental Laboratory operations.

4. Exhibit P–106:   Registration TXU–139–616
   Effective Date:   10/24/83
   Title of Work:   DENTALAB IBM SERIES I USERS MANUAL
   Nature:  Manual for use of computer program.

The registration TXU–139–595 (Exhibit P–104), filed November 7, 1983, was the source code for the original program. The named author was Strohl Systems. The claimant was Whelan Associates by reason of the agreements and writing set forth in findings of fact numbers 14, 15 and 16. (Exhibits J–25, J–26, J–27, P–65). Registration TXU–131–586 (Exhibit P–103) was the source code for the additions and enhancements to the program developed by Whelan Associates.

19. A written agreement dated July 30, 1980 concerning the sale and marketing of the Dentalab Package to other dental laboratories was executed between Whelan Associates and Jaslow Laboratory (Exhibit J–11). The agreement acknowledged the practical fact that Jaslow Laboratory had superior contacts and marketing and sales ability within the dental laboratory industry, and Whelan Associates had the necessary expertise and capability to develop, enhance, adopt, modify, program, install and maintain the Dentalab software program for other dental laboratories. The Agreement of July 30, 1983 was intended to establish a working relationship between Jaslow Laboratory and Whelan Associates. The preamble provided inter alia, as follows:

1. Edward Jaslow and Rand Jaslow are the principal officers and stockholders of Jaslow Laboratory.

2. Elaine Whelan is a recognized expert in designing and developing computer programs.

3. Jaslow Laboratory is using an effective computer program described as the "Dentalab Package," which Jaslow Laboratory owns and "which was designed and developed" by Elaine [Whelan] with the aid and assistance of Edward Jaslow and Rand Jaslow.

4. Both Jaslow Laboratory and Whelan Associates have the right to sell or license the Dentalab Package, together with the necessary component parts, software and accessories.

5. Strohl Systems also would have the right to sell or license the Dentalab package after November 15, 1981, pursuant to the Agreement of November 15, 1979. (Exhibit J–25. See finding of fact number 13).

20. The substantive provisions of the Agreement of July 30, 1980 (Exhibit J–11) provided, in part:

a. Jaslow Laboratory, for a period of one year would be "sales representative" of Whelan Associates "to market, sell or lease the Dentalab Package," together with related components, software and accessories as then existing or thereafter improved or modified.

b. Whelan Associates at its own expense was to improve and augment "the previously successfully designed Dentalab Package."

c. The parties were to cooperate in setting prices, terms and conditions of sale, but the decision of Whelan Associates was to be final and determinative on all such matters, but such determinations could not be "unreasonable."

d. All marketing was to be conducted in the name of Whelan Associates and sales and leases and service arrangements were also to be in the name of Whelan Associates. Final acceptance of all agreements on behalf of Whelan Associates was the responsibility of Elaine Whelan, subject to acceptance not being "unreasonably" refused.

e. After one year, either party could terminate the agreement upon 30 days written notice. Upon termination, Jaslow Laboratory was to return all property of Whelan Associates "including but not restricted to component parts, software, accessories, books, records, papers, leases, agreements with purchasers, sales or promotion literature, etc." Whelan Associates was to return all property of Jaslow Laboratory to Jaslow Laboratory upon termination.

f. Jaslow Laboratory, acting through Edward and Rand Jaslow was to use its best efforts in marketing the Dentalab Package. Jaslow Laboratory was to receive 35% of the gross price of any original package sold plus 5% of any "modification and/or program sold and delivered."

g. Jaslow Laboratory was to pay all of its own expenses including overhead and promotions.

21. By letter dated June 22, 1982, Rand Jaslow, on behalf of Jaslow Laboratory gave Whelan Associates 30 days notice that it did not intend to "renew" the Agreement of July 30, 1980 and suggested that the parties attempt to renegotiate the terms of the Agreement. Basically, Jaslow Laboratory wanted a larger commission on sales, particularly as to enhancement and additions sold a customer after the sale of the basic package. Jaslow Laboratory also claimed that it should receive compensation for work and services it asserted it rendered to customers in supporting a system after it was installed. Despite the letter of June 22, 1982, the parties continued to work in accordance with the Agreement of July 30, 1980 and they did not negotiate any different agreement.

22. By letter dated January 31, 1983 from counsel, Jaslow Laboratory purported to terminate "immediately any relationship" between Whelan Associates and Jaslow Laboratory. In the letter, Jaslow Laboratory asserted that Jaslow Laboratory would thereafter be the exclusive marketer of the Dentalab Package. The letter further demanded return of "all materials related to the Dentalab Package including source and object codes and other pertinent documents." The letter further contended that the Dentalab Package contained valuable Jaslow Laboratory trade secrets that were not to be disclosed. The main contention in the letter from counsel was that Jaslow Laboratory was the sole and absolute owner of the Dentalab System and that Whelan Associates had no rights whatsoever in the system and no right to either market the system or continue to maintain and service systems that were already installed. (Exhibit P–36).

22. Whelan Associates hired Joseph Cerra as vice president of marketing. He worked in close association with Rand Jaslow in selling the Dentalab system to other dental laboratories. In June, 1983, he resigned, after assuring Elaine Whelan that

he was not going to become associated with Rand Jaslow. There was no written agreement between Whelan Associates and Joseph Cerra that he would refrain from competing if and when he left the employ of Whelan Associates.

23. On or about August 1, 1983, Dentcom, Inc. (Dentcom) was formed and organized as a corporation by Rand Jaslow, Edward Jaslow, Joseph Cerra and Paul Mohr as the sole shareholders. The purpose of Dentcom was to market computer software programs including the Dentalab Package to the dental laboratory industry.

24. From July 30, 1980 to May 31, 1983, sixteen Dentalab Systems for IBM-Series 1 computers were sold and delivered by granting licenses to the purchasers. The licenses were issued in the name of Whelan Associates. The computers, owned or leased by the licensees, were programmed and the software installed by employees of Whelan Associates, utilizing the source and object codes and the system as designed and developed by Elaine Whelan.

25. After Elaine Whelan developed the Dentalab System for use with the IBM-Series 1 computer, Whelan Associates, under the supervision of Elaine Whelan, developed essentially the same computer program for use in the IBM-Datamaster 26 Computer, a later model computer. The Source Code for the IBM-Series 1 was written in EDL language. The source code for the IBM-Datamaster 26 was written in BASIC language and, in substance, the program was re-written from the IBM-Series 1 program. The Datamaster 26 computer proved not to be commercially attractive, at least to dental laboratories, and therefore the Dentalab System for the Datamaster is, from a practical standpoint, essentially obsolete. Although Whelan Associates continued to market the Datamaster program, Whelan Associates has also developed a Dentalab System for the IBM–PC Computer. The IBM–PC Computer is a smaller and less expensive computer than the IBM-Series 1 computer. The program as developed by Whelan Associates will perform most of the functions that the Dentalab System for the IBM-Series 1 computer was designed to do. The parties to this litigation expect that the software for the IBM–PC computer will be commercially the most successful.

26. Commencing sometime around May or June of 1982, Rand Jaslow attempted to prepare, on his own, a computer software program for dental laboratories that could be installed on an IBM–PC computer. In doing this, he was able to utilize all of the knowledge he had gained as to the operation of the Dentalab System. He attempted to write a source code in BASIC computer language. He attempted to adopt in almost exact duplication all of the functions, the format of the screens, the language and abbreviations, methods of collating, the file structure and work flow that had been designed into the Dentalab System for the IBM-Series 1 computer.

27. At all times the source codes for the Dentalab System for the IBM-Series 1 computer together with all improvements and enhancements was to be kept in the exclusive possession of Strohl Systems and after November 15, 1979, Whelan Associates and its experts including Elaine Whelan and the Whelan Associates programmers. At no time was Rand Jaslow ever authorized to have a copy of the source codes by either Strohl Systems or Whelan Associates. The source codes were developed exclusively by Strohl Systems, and later enhancements by Whelan Associates and Elaine Whelan. Nevertheless, Rand Jaslow, during the period of time that he was attempting to write a program for the IBM–PC computer, surreptitiously and without consent of either Strohl Systems or Whelan Associates obtained a copy of the source code which he utilized in trying to develop a program for the IBM–PC computer.

28. Rand Jaslow was unsuccessful in his attempt to develop a program for the IBM–PC computer that would be a usable, functional program. In August, 1983, at or about the time of the formation of Dentcom, Jaslow Laboratory and Rand Jaslow employed an expert computer programmer, Jonathan Novak, to assist in developing a

program for the IBM–PC computer. Jonathan Novak proceeded to utilize the work done by Rand Jaslow, which Mr. Novak found to be the work of a talented but unskilled amateur, containing many errors, and showing a lack of expertise in computer programming and designing. Mr. Novak succeeded in developing a workable program for use with the IBM–PC computer.

29. About the time that Dentcom was formed, it started to advertise and aggressively sought to market the Dentalab System for the IBM-Series 1 computers under both the name of Dentalab and a newly adopted name of Dentlab. Upon Mr. Novak developing a usable program, Dentcom and Jaslow Laboratory sought to market the IBM–PC system under the name of both Dentalab and Dentlab. Further, Dentcom and Jaslow Laboratory sought to obtain and to take over the service and maintenance agreements that Whelan Associates had entered into with various purchasers of the Dentalab System that had been marketed under Whelan Associates' name and installed by Whelan Associates.

30. The name Dentlab was used for the purpose of misleading the dental laboratory industry and prospective customers into thinking that the Dentcom system was the same as Dentalab. Some potential customers, as well as customers who had service maintenance agreements, were confused and misled by the name Dentlab as advertised by Jaslow Laboratory and Dentcom.

31. Jaslow Laboratory, subsequent to May 31, 1983, advertised and marketed the IBM-Series 1 Computer system under the name of Dentalab and Dentlab. It sold at least two IBM-Series 1 systems. One was sold to Cooper Laboratories of Baltimore, Maryland. The other was sold to Myron Laboratory of Kansas City, Kansas. Both laboratories had been actively solicited as strong prospects by both Rand Jaslow and Joseph Cerra prior to May 31, 1983. The system was obtained by direct copying of the system then in use by Jaslow Laboratory. The sales were finalized and the systems installed after a hearing held on November 3, 1983 on an application by Jaslow Laboratory for a preliminary injunction, which application was denied. At that hearing Jaslow Laboratory as well as Rand Jaslow and Edward Jaslow advised the Court through counsel that they had no interest in marketing IBM-Series 1 programs.

32. The sale price of each of the two licenses sold by Jaslow Laboratory was $22,000. Jaslow Laboratory had direct installation costs of $654.54 on the Cooper Laboratories sale and $1,246.23 on the Myron Laboratory sale. Thus, the gross profits from the sale of the two systems was $42,099.23.

33. As of May, 1983, on accounts due between Whelan Associates and Jaslow Laboratory, Whelan Associates owed Jaslow Laboratory $16,829 on the basis of their agreements existing to that date. Whelan does not dispute this amount in any way, except to contend that Jaslow Laboratory is not entitled to recover anything on any contractual claims because of its breach of fiduciary duties to deal in good faith with Whelan Associates.

34. Dentcom has sold 23 licenses for the IBM–PC Dentcom system under the name Dentlab. The gross sales price, including sales of computer hardware, is $212,060. The sales price of the hardware was $110,-791, leaving a gross sales profit on the sale of the licenses of $101,269.

35. There are many similarities between the IBM–PC program presently being marketed and sold by Dentcom and the IBM-Series 1 software program designed and developed by Elaine Whelan. The source codes for the two systems are in different computer languages. No direct translation from the EDL language to the BASIC language was made by Rand Jaslow or Jonathan Novak. The IBM-Series 1 Dentalab System can be directly copied even where there is no literal translation. Attempting to translate literally the source and object codes from the EDL language to the BASIC language would be an inefficient method of copying the computer system pro-

gram. Knowledge and use of the source code in order to make the conversion from EDL to BASIC is very helpful.

36. Dr. Moore testified as a computer expert on behalf of plaintiff. He testified to the many similarities between the IBM-Series 1 system and the IBM–PC Dentcom system. His concluding opinion was that the person who wrote the Dentcom PC program "had a thorough knowledge of the Series 1 system, and he used that knowledge to design the Dentcom system, whether it was a case of reading the Series 1 program and copy [sic] it over, of course, I don't know." (Notes of testimony, July 10, 1984, page 7). Dr. Moore also stated that although he could not say whether the person preparing the IBM–PC program had the IBM-Series 1 source code "alongside of him when he wrote the other one" that "[s]ometime in the past he must have had access to source code to be able to understand the system and to be able to use all those same sequential operations," and that he "either worked from the source code or had a thorough knowledge of the Series 1 system."

37. Stephen A. Hess testified as an expert on behalf of the defendants. In substance, he testified to the many differences and dissimilarities between the IBM-Datamaster 26 system written in BASIC and the IBM–PC Dentcom system. He concluded that the IBM–PC Dentcom system was "not directly derived from either the Series 1 or the Datamaster system." His study and research was primarily a study of the source codes, and he did not examine the actual operation of any of the systems in dispute.

## B. DISCUSSION

Plaintiff and defendants both claim exclusive proprietary rights to a computer software system developed as a complete computer business management and control program for the operation of dental laboratories. The original system was designed and programmed for use with an IBM-Series 1 computer. The source code was written in EDL computer language.

Thereafter the program was re-written in BASIC computer language for use on the IBM-Datamaster 26 computer. Plaintiff filed copyright registrations for the IBM-Series 1 computer system, including additions and enhancements and manuals.

Defendants claim that they, through Rand Jaslow, co-authored with Elaine Whelan the original program. In addition, defendants claim that the original program and its enhancements for use with the IBM-Series 1 computer was written and designed exclusively for Jaslow Laboratory, and as such the defendants are the sole owners of the entire program, including the source and object codes. Defendants therefore contend that the copyrights registered in the name of Whelan Associates are invalid. Defendants further contend as to the IBM–PC Dentcom system that: (a) since they are the owners of the IBM-Series 1 system they had the right to copy or use that system in any way they saw fit to develop the IBM–PC system, or alternatively (b) as co-author and co-owners they had such a right, and finally (c) the IBM–PC system was developed independently from the IBM-Series 1 system and is not a copy and therefore does not constitute infringement of any copyrights, even if the copyrights are valid. Defendants further contend that the use by them of the name Dentlab is not an infringement of any trade name rights asserted by plaintiff to the name Dentalab. Defendants claim "Dentalab" is a generic descriptive name not subject to trade name protection.

The disputes between the parties have several distinct categories. First are those concerning the rights and liabilities arising out of the development and marketing of the IBM-Series 1 program. Apparently, both plaintiff and the defendants agree that this category is relatively minor because it is not anticipated that there will be extensive future sales of this system due largely to obsolescence of the IBM-Series 1 computer or at least its lack of acceptability by dental laboratories. Defendants have repeatedly stated through counsel that they have no interest in the marketing

of IBM-Series 1 software; nevertheless they did finalize two sales subsequent to the hearing on the application for a preliminary injunction. If those sales violated plaintiff's rights, plaintiff is entitled to damages for such sales as well as possible injunctive relief as to future sales.

The second and most substantial dispute involves the rights and liabilities arising out of defendants, through Dentcom and Rand Jaslow, developing and marketing the software system for the IBM–PC computer. If this was a copy of the IBM-Series 1 software system, and if plaintiff had exclusive rights to that system and the copyrights are valid, then defendants would be liable for infringement and subject to being enjoined from future marketing of the system. All parties agree that the potential for future sales and profits for the software systems that have been developed by the parties for use by dental laboratories rests almost exclusively with the IBM–PC computer programs.

Finally, there are disputes between the parties arising out of claims of unfair and deceptive business practices including the use of the name of Dentlab by Dentcom. Again, counsel for defendants has asserted that this name has not been used by any of the defendants since the hearing on the application for a preliminary injunction. Nevertheless, defendants contend their use of the name Dentlab was and remains proper, and that the name Dentalab is a generic, descriptive word—not a protectable trade name.

A three day hearing on an application by defendant for a preliminary injunction concluded on November 2, 1983. I declined to grant any preliminary injunctive relief. After extensive but fruitless settlement negotiations, discovery was concluded and the case was brought to trial. Pursuant to Federal Rule of Civil Procedure 65(a)(2), the evidence presented at the preliminary injunction hearing was made a part of the trial record and evidence.

At the conclusion of the preliminary injunction hearing I stated, from the bench, certain findings of fact and conclusions of law which I made based on the record as it then stood. (See hearing of November 2, 1983, "third day," pages 3.192 through 3.206 inclusive). Upon the whole record I now reaffirm those findings and conclusions, and they shall be deemed a part of this decision. Among those findings and conclusions were, in substance, the following:

1. Strohl Systems initially designed and developed the software computer system and programs for the IBM-Series 1 computer. Elaine Whelan, the person instrumental in the design of the system later acquired all of the interest of Strohl Systems in the software system, and she, in turn, transferred all of her interest to the plaintiff, Whelan Associates.

2. From the outset it was understood and agreed between Strohl Systems and Jaslow Laboratory and its officers, agents and employees that the computer system to be designed and placed in operation and used by Jaslow Laboratory would be made adaptable, available, sold and marketed to other dental laboratories including competitors of Jaslow Laboratory, and that Jaslow Laboratory would be involved in the marketing and selling of such computer systems to other dental laboratories.

3. Strohl Systems and Jaslow Laboratory worked together under an agreement (Exhibit J–2) for selling computer systems to dental laboratories that expressly provided that all software developed by Strohl Systems for Jaslow Laboratory would remain under the ownership of Strohl Systems and that Strohl Systems could market the system to other dental laboratories and that Jaslow Laboratory would receive 10% of the basic package price for each system sold, but modifications to any system would be sold separately and all proceeds from such sales were to go to Strohl Systems. This agreement was subsequently modified between Whelan Associates and Jaslow Laboratory by agreement of July 30, 1980, whereby Jaslow would receive 35% of the gross price of any program sold plus 5% of any modifications. (Exhibit J–11).

4. The agreement between Whelan Associates and Jaslow Laboratory dated July 30, 1980 (Exhibit J–11) acknowledged that Jaslow Laboratory owned its own specialized system that had been programmed for it on its IBM-Series 1 computer. I concluded, however, that Jaslow Laboratory did not own or hold a proprietary interest in the computer software system or its source or object codes that had been designed and developed by Elaine Whelan for use by other dental laboratories throughout the industry.

5. The agreement of July 30, 1980 required Jaslow Laboratory, upon termination of the agreements, to turn over to Whelan Associates all of the software system, which would include the source and object codes if Jaslow Laboratory had possession of any copy of them, and that all rights to market the system would revert to Whelan Associates.

6. Jaslow Laboratory revealed no trade secrets to Whelan Associates and/or Strohl Systems under any claim of confidentiality, and no trade secret of Jaslow Laboratory was in any way incorporated into or disclosed by the computer system developed and marketed by Whelan Associates to other dental laboratories.

■ One of the defendants' principal contentions is that Rand Jaslow was a co-author and owner of the Dentalab System both as originally designed and with all of its improvements and enhancements. From this defendants contend: (a) the copyrights registered by Whelan Associates are invalid for not disclosing Rand Jaslow's co-ownership (b) Jaslow Laboratories had and continues to have at least a co-equal right with Whelan Associates to market, sell and service Dentalab Systems for the IBM-Series 1, IBM-Datamaster, and IBM–PC computers, (c) Jaslow Laboratories is entitled to possess, utilize, copy and sell all source and object codes that were developed by Elaine Whelan and all other information derived from the designing and development of the system.

Rand Jaslow's claim of co-authorship stems from his claim that he originated the concept of developing an overall computer program that could accommodate the business needs of a dental laboratory, that he disclosed to Elaine Whelan in detail the operation and methods of Jaslow Laboratory in conducting its business, that he explained to Elaine Whelan the functions to be performed by the computer and helped design the language and format of some of the screens that would appear on the computer's visual displays. In addition, Rand Jaslow claims that he had gained on his own, extensive knowledge and understanding of computers by practicing on a small mini-computer, and therefore gave valuable assistance to Elaine Whelan.

I have concluded and found from all of the evidence that it was Elaine Whelan and her own staff at Strohl Systems who alone designed the system. She alone was the author. It was her expertise and creativeness that designed the methods by which the raw information would be stored, held in memory, collated, assembled, updated, incorporated and added to the visual screens or included in print-outs, subject to recall. She designed the flow of the system, establishing communication and coordination among the various functions, and in general, made the system operate as a successful and useful business tool. Although there may have been others who could have designed an equally satisfactory system, given the information provided by Rand Jaslow, it was nevertheless Strohl Systems through Elaine Whelan alone that was the author of the source and object codes and the designer of the system.

Rand Jaslow did little more than explain the operations of the dental laboratory business and define the information he wanted to be able to obtain from the computer. The information and advice which Rand Jaslow provided was little more than one would expect from the operator of any business who seeks to have a computer system designed for him. Such general assistance and contributions to the fund of knowledge of the author did not make Rand Jaslow a creator of any original work, nor even the co-author. It is similar

to an owner explaining to an architect the type and functions of a building the architect is to design for the owner. The architectural drawings are not co-authored by the owner, no matter how detailed the ideas and limitations expressed by the owner. *See Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.*, 542 F.Supp. 252 (D.Neb.1982).

In 17 U.S.C. § 101 the definition of a "joint work" is a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary work." There is not a scintilla of evidence that the parties ever intended that Rand Jaslow's contributions, whatever they may have been, should merge into the final computer design and system. The only suggested merger into the whole might be the wording and the abbreviations contained on some of the visual screens. His contributions were not of sufficient significance to constitute him a co-author of the system. *Compare Meltzer v. Zoller*, 520 F.Supp. 847 (D.N.J.1981).

■ The defendants also contend that they are entitled to the protection of the copyright laws under the "works for hire" doctrine. 17 U.S.C. §§ 101, 201(b). Elaine Whelan was the author, she created not only the source and object codes, but the embodiment of the whole system as to the methods by which the computer would perform its functions. Clearly, she was the employee of Strohl Systems which, in turn, was engaged as an independent contractor by Jaslow Laboratory. Elaine Whelan was never an employee of Jaslow Laboratory. Under the 1976 Copyright Act the works for hire doctrine only applies to independent contractors in certain limited circumstances defined by the Act. *See Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.*, 542 F.Supp. at 256–58. Those circumstances are not present in this case, and therefore the works for hire doctrine does not apply. Moreover, the agreement between Jaslow Laboratory and Strohl Systems expressly provided that the software developed for the system would

"remain under [Strohl System's] ownership." (Exhibit J–2). This contractual provision supersedes any potential work for hire rights. *See* 17 U.S.C. § 201(b).

The registered copyrights are valid. Strohl Systems was the owner of the rights to the initial system that was developed. It transferred the rights to Elaine Whelan and she in turn transferred them to Whelan Associates. The enhancements and updates were authored by employees of Whelan Associates.

■ Nothing in the contractual agreements and arrangements between or among Strohl Systems, Whelan Associates and the defendants supports the contention of the defendants that they had the right to continue to market the IBM-Series 1 computer after terminating the written agreement. Defendants seem to claim the sole and exclusive right to the program, its enhancements and derivatives. The only support for this is the statement in the Agreement of July 30, 1980 (Exhibit J–11) that Jaslow Laboratory "owns the Dentalab Package." The same sentence adds that the Dentalab Package was designed and developed by Elaine Whelan with the aid and assistance of Edward Jaslow and Rand Jaslow. The defendants do in fact own and have paid for the single copy of the original work which is embodied in their own individual computer. However, the software developed for that system remained under the ownership of Strohl Systems (Exhibit J–2). The Copyright Act expressly contemplates the separate concept of ownership of a copyright as distinct from ownership of a copy of the work:

Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object....

17 U.S.C. § 202.

There is no doubt that a software computer system is subject to the protection of

a copyright registration. By 1980 amendments to the copyrights laws "computer programs" were expressly defined and given the protection of the copyright laws. *See* 17 U.S.C. §§ 101, 117; *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir.1983); *Williams Electronics v. Artic International, Inc.*, 685 F.2d 870 (3d Cir.1982).

■ I conclude that plaintiff is the owner of valid copyrights to the Dentalab System as designed for the IBM-Series 1 computer. Plaintiff never licensed or authorized defendants, or any of them to sell or market or install such a system subsequent to defendants' termination of the Agreement between the parties by letter dated May 31, 1983 (Exhibit P–36).

Clearly, therefore, the two subsequent sales by Jaslow Laboratory to Cooper Laboratories and Myron Laboratory were willful and deliberate copyright infringements. Defendant, Jaslow Laboratory is liable for all profits it received. Although the evidence is somewhat scant, the only direct costs that Jaslow Laboratory incurred that have been satisfactorily established are set forth in finding of fact number 32.

A more difficult factual determination must be made as to whether the IBM–PC program developed by Rand Jaslow on behalf of all the defendants constitutes copyright infringement. If only the source and object codes can be the subject of copyright, obviously there would be no infringement.

■ The mere idea or concept of a computerized program for operating a dental laboratory would not in and of itself be subject to copyright. Copyright law protects the manner in which the author expresses an idea or concept, but not the idea itself. *Albert E. Price v. Metzner*, 574 F.Supp. 281 (E.D.Pa.1983). Copyrights do not protect ideas—only expressions of ideas. *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 908 (3d Cir.1975). There are many ways that the same data may be organized, assembled, held, retrieved and utilized by a computer. Differ-ent computer systems may functionally serve similar purposes without being copies of each other. There is evidence in the record that there are other software programs for the business management of dental laboratories in competition with plaintiff's program. There is no contention that any of them infringe although they may incorporate many of the same ideas and functions. The "expression of the idea" in a software computer program is the manner in which the program operates, controls and regulates the computer in receiving, assembling, calculating, retaining, correlating, and producing useful information either on a screen, print-out or by audio communication.

■ The expression of the idea embodied in a computer program is protected by the copyright laws even though it must be altered and refined to be made adaptable to different types of computers that have different methods of responding to command controls and therefore require different source codes. *See generally Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir.1983). The mere fact that the IBM–PC source code is written in BASIC rather than EDL, (as is the IBM-Series 1 source code) does not preclude the possibility of copying or copyright infringement. The idea of a computerized system to control the operations of a dental lab is not subject to copyright. The particular expression of that idea created and fixed in the plaintiff's IBM-Series 1 Dentalab system, however, is copyrightable, and the evidence demonstrates that defendants actually did copy that expression in writing the source and object codes for their IBM–PC Dentcom system.

The evidence establishes that it would be very difficult if not impossible to literally translate a program written in EDL to a program written in BASIC. The evidence makes clear that transferring or converting from one computer language to another is not comparable to translating a book written in English to French. At least, it would be a very inefficient method of copying a program to attempt to work

solely from the source code and literally translate it from EDL to BASIC. As I understand the evidence, in order to copy a program written in EDL for use in a computer that operates on a source code written in BASIC, one would study the method and manner that the computer receives, assembles, calculates, holds, retrieves and communicates data. This requires a study of the manner in which the information flows sequentially from one function to another. Once this is fully understood, one may copy this exact manner of operation for use in a computer that responds to commands written in a different source code language.

■ Rand Jaslow contends that the system he designed for the IBM–PC was his own creation and not a copy of the IBM-Series 1, nor a "direct derivative." Plaintiff has the burden of proving that the alleged infringing IBM–PC Dentcom program was "copied" and that the "copy" is an improper appropriation. *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir.1946); *Klitzer Industries, Inc. v. H.K. Jones & Co.,* 535 F.Supp. 1249 (E.D.Pa.1982).

■ Direct evidence of copying is not required. Access to the original, combined with substantial similarity, may be sufficient to prove by circumstantial evidence that the accused work is a copy of the original. *Custom Decor, Inc. v. Nautical Crafts, Inc.,* 502 F.Supp. 154, 157 (E.D. Pa.1980). Access in this case is clearly established. Not only was Rand Jaslow quite familiar with the original program— so much so that he claims co-authorship— but he also improperly acquired and had available the actual source code—again under a claim of right as owner or co-owner. It is quite clear that Rand Jaslow had and utilized the source code in his attempt to develop the IBM–PC Dentcom program. The almost complete similarity between the programs would have been impossible without direct utilization of the source code.

Rand Jaslow suggests that the IBM–PC Dentcom program was his original creation because he himself was unsuccessful in producing an effective program and finally engaged Mr. Novak, a computer expert, to make the program workable. Mr. Novak, defendants argue, did not copy the original source code. Mr. Novak's testimony however is that he merely corrected many of the mistakes and inefficiencies which Rand Jaslow had been unable to rectify. Mr. Novak did not testify or contend that he had authored the program. Whether Mr. Novak had or used the IBM-Series 1 source code is not controlling.

The evidence presented on similarities between the two programs was extensive and detailed and was carefully and accurately analyzed and summarized in plaintiff's proposed findings of fact number 97 through 136 inclusive.[1] Little would be served by going over the similarities in detail. In this case both parties had an expert testify. Expert testimony as to similarity is clearly appropriate. *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir.1946). It is difficult for one having practically no knowledge of the operation of computers and computer software systems to judge which of two experts in the field is the more credible. I conclude however that Dr. Moore, plaintiff's expert had greater knowledge as to the particular programs at issue. Dr. Hess, the defendants' expert witness, reviewed only the source and object codes of the IBM-Series 1, the IBM-Datamaster and the IBM–PC Dentcom system. He never observed the computer in operation nor viewed the various screens or the user's manual. He stated he was not familiar with EDL coding. More basically, however, his comparison as to dissimilarities was between the IBM-Datamaster and the IBM–PC Dentcom systems. Plaintiff contends that the IBM–PC Dentcom is a copy of the IBM-Series 1 system—not the IBM-

1. Because case law of this circuit may preclude a district judge from accepting verbatim a party's proposed findings of fact, to the extent I may do so I agree that plaintiff has proved by a preponderance of the evidence plaintiff's proposed findings of fact Nos. 97 through 136 inclusive, and adopt them as additional findings of fact. My decision in this case would however be the same, without the inclusion of such findings of fact.

Datamaster system. Dr. Hess's conclusions were that although the overall structure of those systems is similar, the code in the IBM–PC Dentcom is not "directly derived" from either plaintiff's IBM-Series 1 or its IBM-Datamaster system. To the extent that Dr. Moore's testimony supports plaintiff's contentions of copying, I find his testimony more credible and helpful because of his detailed and thorough analysis of the many similarities.

One thing is readily apparent to even the most casual untrained observation of the operation of the two systems—the visual screens that are displayed are almost identical in format and even in use of abbreviations and terminology. There is credible evidence that prospective users and customers at trade shows found no substantial difference between the Dentalab computer software system and the Dentcom system, and considered them to be the same.

Finally, the evidence convinces me that Rand Jaslow, described by his own witness, Mr. Novak, as a talented but amateur programmer, lacked the ability to create on his own, or even with the help of a skilled programmer in correcting his errors, a workable system, especially one that is almost an exact duplicate of the system of Whelan Associates. As Dr. Moore stated, the person who wrote the IBM–PC Dentcom system had to have access to the plaintiff's Dentalab source code to be able to understand the system and to be able to use all the same sequential operations.

In advertising materials sent out by Dentcom it openly claimed the Dentcom system as the same. In Exhibit D–42 the statement is made: "At last the 'dentalab' system available under ten thousand dollars."

■ I conclude that the IBM–PC Dentcom system is a copy of the IBM-Series 1 Dentalab system, and that it was an improper appropriation constituting a copyright infringement. Dentcom and Rand Jaslow are liable in damages for the profits made from the sale of the 23 infringing Dentcom systems. 17 U.S.C. § 504(b) provides the measure of damages as follows:

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

There is evidence of the gross sales price, less the computer hardware sold. (See Finding of Fact 34). Although defendants submitted a statement of expenses (Exhibit J–5), the statement is vague and does not itemize adequately to determine whether the claimed expenses are legitimate. Defendants have not sustained their burden of proving any expenses, and the gross profit will be awarded. It should be noted that there is testimony that the IBM–PC Dentcom System is intended to be a "shelf model," in that there are no required duties of the seller to install or "set up" the system as in the Dentalab IBM-Series 1 system that involved expenses of $1,000 to $3,000 per sale. *See Sid & Marty Krofft Television Productions Inc. v. McDonalds Corp.*, 562 F.2d 1157 (9th Cir. 1977).

■ The infringement of the copyright was willful and deliberate. Defendants simply took the risk that their claims of co-authorship and of contractual ownership would be upheld. The Copyright Act expressly provides for costs and attorney's fees in the discretion of the trial court. 17 U.S.C. § 505. Where the violation is willful and deliberate as here, attorney's fees and costs should, absent unusual circumstances, be allowed. *U.S.R. Imports, Inc. v. R.E. Greenspen Co., Inc.*, 220 U.S.P.O. 361, 374–75 (E.D.Pa.1983).

■ Plaintiff claims that case law interpreting the Lanham Act permits treble damages, and also punitive damages, and,

in "exceptional cases" (15 U.S.C. § 1117), attorney's fees and costs. No trade name of Dentalab was ever registered by plaintiff so far as the evidence discloses. I therefore find that analogy to these statutory remedies is non-persuasive. Although the name Dentlab was undoubtedly intended to and did in fact mislead the buying public, I do not find that it was a false designation of origin, description or representation within the context of 15 U.S.C. § 1125.

Plaintiff contends that the use of the name Dentlab constituted a common-law unfair business practice; and that under the common law defendants tortiously interfered with contractual relationships of plaintiff with its customers and tortiously interfered with future prospective contractual relationships at least as to the sales of the IBM-Series 1 system to Cooper Laboratories and Myron Laboratory. Assuming without deciding that plaintiff has proved such causes of action, no damages have been established that could in any way be quantified or reduced to judgment, beyond those same damages that have been established for the copyright violation. The only question is whether, in addition to compensatory damages, there should be some award of punitive damages. Plaintiff seeks substantial punitive damages.

In this case I decline to award any punitive damages. Although defendants' conduct as to the copyright infringement was willful and deliberate, the appropriating of the source code was without authorization or consent, the hiring of Joseph Cerra and utilizing him to make two infringing sales, the use of the name Dentlab by defendants, the damage that defendants caused to some of the computer programs sold by plaintiffs to its customers, and other business conduct was reprehensible and in many instances tortious, actual harm to plaintiff beyond the amount of compensatory damages to be awarded is, at best, uncertain and speculative.

Punitive damages are imposed to act as an example and to prevent similar future misconduct by the party assessed. In this case, plaintiff seeks to continue in the business of marketing its software programs to the dental laboratory industry. Defendants want to market, in competition, their IBM-PC Dentcom computer. Because I have found this to be an infringement of plaintiff's copyrights, an injunction will issue against such marketing. This, it seems to me will adequately serve the purposes that are ordinarily advanced by a punitive damage award.

Because all defendants were involved in the copyright infringement and all prospectively would gain by continued sales in the future, all will be enjoined.[2]

To the extent that the Discussion portion of this opinion contains findings of fact and conclusions of law not specifically set forth under those respective headings of the opinion, they shall be deemed additions thereto.

## C. CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and personal jurisdiction over the parties. Venue in this district is proper.

2. Whelan Associates is the sole owner of the registered copyrights to the Dentalab System; registrations TXU–131–586; TXU–139–595; TXU–319–614; and TXU–139–616. The copyrights are valid.

3. Defendants, Jaslow Laboratory and the corporate officers Edward Jaslow and Rand Jaslow willfully and intentionally infringed the copyrights of plaintiff by copying and selling IBM-Series 1 Dentalab computer systems to Cooper Laboratories of Baltimore, Maryland to Myron Laboratory of Kansas City, Kansas. The profits from these two sales were $42,099.23 for which the defendants, Jaslow Laboratory, Edward Jaslow and Rand Jaslow are jointly and severally liable.

**2.** Joseph Cerra, prior to trial, settled. No judgment or injunction will be rendered against him.

4. Defendants, Dentcom, and its corporate officers Edward Jaslow and Rand Jaslow willfully and intentionally infringed the copyrights of plaintiff by developing, marketing and selling IBM–PC computer systems for dental laboratories under the trade name of Dentlab or Dentalab. Twenty-three such infringing sales have been made. The gross profits from such sales is $101,269, for which sum the defendants Dentcom, Edward Jaslow and Rand Jaslow are jointly and severally liable. Defendants have not proved any deductible expenses.

5. On accounts arising between the parties on the agreement in existence prior to its termination on May 31, 1983, Whelan Associates owes Jaslow Laboratory the sum of $16,829, which shall be set off against the amount of damages owed by Jaslow Laboratory.

6. The use of the word Dentlab in connection with the marketing dental laboratory software computer programs and equipment is confusingly similar to the use of the word Dentalab in the marketing of similar products. Plaintiff has the right to continue to use the name Dentalab in connection with its marketing of computer software for the dental laboratory industry to the exclusion of defendants' use of Dentlab or Dentalab.

7. The name "Dentalab" is a valid trade name, it is not a generic descriptive word. Plaintiff is entitled to prospective injunctive relief against all defendants from continued copyright infringement by means of marketing the IBM–PC Dentcom system and prospective injunctive relief against all defendants from continued use of the word Dentlab in connection with marketing and selling computer software to the dental laboratory industry.

8. Plaintiff is entitled to counsel fees and costs.

## ORDER AND FINAL JUDGMENT

For the reasons set forth at the conclusion of the hearing on the application for a preliminary injunction, and for the reasons set forth in the "Discussion" and upon the Findings of Fact and Conclusions of Law filed with the opinion accompanying this Order, it is

ORDERED, ADJUDGED and DECREED as follows:

1. Judgment is entered in favor of the plaintiff, Whelan Associates, Inc. and against the defendants, Jaslow Dental Laboratory, Inc., Edward Jaslow and Rand Jaslow jointly and severally in the sum of $25,270.23 (being $42,099.23 damages on plaintiff's complaint, less $16,829 set-off on defendants' counterclaim).

2. Judgment is entered in favor of the plaintiff Whelan Associates, Inc. and against the defendants, Dentcom, Inc., Edward Jaslow and Rand Jaslow, jointly and severally in the sum of $101,269.00.

3. The defendants, Jaslow Dental Laboratory, Inc., Dentcom, Inc., Edward Jaslow and Rand Jaslow, jointly, severally and individually, and all other persons working in concert with them or any of them, are permanently enjoined and restrained from doing or attempting to do, either directly or indirectly, any of the following acts:

a. Marketing, advertising, selling, leasing, or licensing the IBM–PC Dentcom, Inc., software computer program or system for use in or in connection with the operation of any dental laboratory, or any derivative, addition, enhancement or improvement to said system, including any and all accessories, instruction manuals, use guides and similar related items.

b. Using in any way the name Dentlab in connection with any product used in any way in or as a part of a computer software program or system for use in or in connection with the operation of any dental laboratory.

c. Representing in any way to anyone that they or any of them are a continuation or successor to any business of Whelan Associates, Inc.

d. Marketing, advertising, selling, leasing or licensing under any name or designation whatsoever the Dentalab Package, the IBM-Series 1 Dentalab

Package, the IBM-Datamaster 26 Dentalab Package or the IBM–PC Dentalab Package including any and all enhancements and improvements, to any dental laboratory except upon express written consent and authorization from Whelan Associates, Inc.

e. Using, copying, selling, leasing or licensing in any way the source or object code to any Dentalab Package, including the IBM-Series 1, IBM-Datamaster IBM–PC Dentalab Package and system, except that defendants may continue to use, in connection with the business of operating its own dental laboratory, the IBM-Series 1 Dentalab Package originally acquired from Strohl Systems, Inc., and its present enhancements and improvements. Any source or object code to said programs or copies or portions thereof in the possession of any of the defendants shall be delivered to Whelan Associates, Inc., within ten days from the date of this judgment.

4. Defendants shall pay plaintiff's costs and counsel fees. If the parties cannot agree upon the amount of counsel fees, plaintiff shall submit within 30 days from the date of this Order a motion for counsel fees conforming to the substantive requirements for applications for counsel fees as defined by the Court of Appeals for the Third Circuit in various case law.

5. The parties may by signed written agreement and stipulation filed with the Court from time to time agree and stipulate to amendments, additions, and deletions to this decree as to the injunctive relief granted.