**James J. ANDRIEN, Appellant in No. 90–5622**

v.

**SOUTHERN OCEAN COUNTY CHAMBER OF COMMERCE; Manahawkin Newspapers, Inc.; William Sherry, t/a Surf Printing, Appellees in No. 90–5622.**

**James J. ANDRIEN, Appellant in No. 90–5623**

v.

**Joseph W. INMAN and Inman Realty, Appellee in No. 90–5623.**

Nos. 90–5622, 90–5623.

United States Court of Appeals, Third Circuit.

Argued Jan. 14, 1991.

Decided March 1, 1991.

Rehearing and Rehearing In Banc Denied April 3, 1991.

Donald C. Simpson (argued), Simpson & Simpson, P.C., Moorestown, N.J., for appellant.

Robert G. Shepherd (argued), Mathews, Woodbridge & Collins, Princeton, N.J., for Southern Ocean County Chamber of Commerce.

Gerard P. Scala, Hughes & Hendrix, West Trenton, N.J., for Manahawkin Newspapers, Inc.

Eric G. Daniel, Frank P. Cavallo, Jr., Slimm, Dash & Goldberg, Westmont, N.J., for Williams Sherry t/a Surf Printing.

Marc Spielberg, Barnegat Light, N.J., for Joseph Inman and Inman Realty.

Before STAPLETON, GREENBERG and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The district court held that the plaintiff who assembled a series of maps and turned them over to a printing firm to prepare a composite was not the author for copyright purposes. Accepting the plaintiff's version of events for summary judgment purposes, we conclude that the record does not support depriving plaintiff of his status as author. Accordingly, we will reverse the summary judgment in favor of defendants and remand for further proceedings.

Plaintiff James Andrien was a real estate agent on Long Beach Island, New Jersey. In 1980, he received a copyright registration from the Copyright Office for a map of Long Beach Island. The certificate described a copyright for a compilation of pre-existing maps, street names, street lines and other information assembled and created from a personal survey of the island. Andrien engaged the A & H Company to print the map.

Andrien asserts that sometime after the original printing was exhausted, defendants distributed unauthorized copies of the map and infringed the copyright. He filed complaints in the district court seeking injunctive relief as well as damages for copyright infringement, unfair trade practices and unfair competition. Named as defendants were Southern Ocean County Chamber of Commerce, Joseph Inman and Inman Realty, Manahawkin Newspapers, Inc. and William Sherry, trading as Surf Printing, all of whom allegedly either distributed, prepared or printed the maps.

Andrien decided to prepare a map of the area when he found the sketch distributed by defendant Chamber of Commerce incomplete and difficult to read. He collected available maps of local taxing bodies and a divers' map locating shipwrecks in the area. In a personal survey Andrien noted civic landmarks, fishing sites and previously unlisted street names. He determined the scale to be used on the finished map by driving his automobile between intersecting streets and measuring the distance on the odometer.

The collection of maps that Andrien took to A & H Printers used varied scales and almost illegible street names. To prepare the new map for printing, A & H assigned Carolyn Haines to do the "art work." This included coordinating the scales, relettering the street names and adding designations for the diving sites as well as for local points of interest. Haines photographed the various maps to synchronize the scales and typed individual labels for the street names. After a large paste-up working map was completed, it was reduced to a commercially useable size and printed.

In his deposition Andrien testified that Haines performed these assignments at his direction, "with me at her elbow practically." Almost daily he spent about an hour at the print shop over a three week period.

The parties deposed Herbert Josephson, a representative of the A & H Printing Company. His testimony tended to cast some doubt that Andrien's contribution to the final product was as extensive as he asserted, but in considering the motion for summary judgment filed by defendants the district court properly accepted the plaintiff's version. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

The district court concluded that Andrien was not the author because, although he had closely supervised the project, "he did none of the actual layout [and] was not always present when Haines worked on the map." The judge believed that Andrien had not translated his idea into a fixed, tangible expression but that had been done by A & H Printing, "or more specifically, Carolyn Haines." The judge also rejected joint authorship, "I think since Andrien supplied information and ideas from which A & H and Haines created the map, Andrien cannot even claim to be a joint author with A & H Printing."

The court then addressed the question of whether the map was made as "work-for-hire" and perhaps deserving of copyright protection under that theory. The record, however, did not establish that Andrien was A & H's employer or that a written agreement existed, and therefore the map was not a work-for-hire. *See* 17 U.S.C. § 101; *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

On appeal, Andrien contends that whether he is the author is the subject of a genuine factual dispute and therefore summary judgment was inappropriate. He does not challenge the district court's work-for-hire ruling.

■ As a general rule copyright protection is available for maps, 17 U.S.C. § 102(a)(5), or a compilation of existing maps. 17 U.S.C. § 103. *See Rockford Map Publishers, Inc. v. Directory Service Co.*, 768 F.2d 145 (7th Cir.1985), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 806, 88 L.Ed.2d 781 (1986); *United States v. Hamilton*, 583 F.2d 448 (9th Cir.1978); *Amsterdam v. Triangle Publications, Inc.*, 189 F.2d 104 (3d Cir.1951).[1] *See generally* 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.08[A] (1990). Accepting the copyright statute's application to the map under consideration, the parties present us with a

narrow issue: the controversy over Andrien's status as an author.

■ Copyright is available only for the expression of a work of authorship, not for a mere idea. *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1234 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987). Generally authorship is a factual question for the jury. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989); *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 980 (9th Cir.1987).

■ A plaintiff's duly issued certificate of registration suffices as prima facie evidence of the copyright's validity. 17 U.S.C. § 410(c); *see Williams Electronics, Inc. v. Artic Int'l., Inc.*, 685 F.2d 870, 873 (3d Cir.1982). A defendant's burden of rebutting the presumption varies with the issues bearing on the validity of the copyright. *See Masquerade Novelty, Inc. v. Unique Industries, Inc.*, 912 F.2d 663, 668 (3d Cir. 1990).

The Supreme Court has stated that "[a]s a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non–Violence*, 109 S.Ct. at 2171. The Copyright Act defines a work as "fixed" in a tangible medium of expression when "its embodiment in a copy ... by or under the authority of the author, is sufficiently permanent ... to permit it to be ... reproduced." 17 U.S.C. § 101.

The critical phrase is "by or under the authority of the author." That statutory language and the Supreme Court's guidance produce a definition of an author as the party who actually creates the work, that is, the person who translates an idea into an expression that is embodied in a copy by himself or herself, or who authorizes another to embody the expression in a copy. The definition, however, has limits.

---

**1.** Professor Nimmer questions whether the direct observation rule articulated in *Amsterdam* survives the 1976 Act. 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.08[A][b] at 2–80

(1990). We need not decide that point because the map under consideration here meets the more stringent *Amsterdam* criteria.

When one authorizes embodiment, that process must be rote or mechanical transcription that does not require intellectual modification or highly technical enhancement such as occurred in *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir.1990) (architectural drawings), *Geshwind v. Garrick*, 734 F.Supp. 644 (S.D.N.Y. 1990) (computer animated film), and *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 609 F.Supp. 1307 (E.D.Pa. 1985) (computer program), *aff'd*, 797 F.2d 1222 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987).

Poets, essayists, novelists, and the like may have copyrights even if they do not run the printing presses or process the photographic plates necessary to fix the writings into book form. These writers are entitled to copyright protection even if they do not perform with their own hands the mechanical tasks of putting the material into the form distributed to the public.

There is a "fundamental distinction" between an "original work" of authorship and "the multitude of material objects in which it can be embodied." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 53, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5666. As the House Report explained:

> "Thus, in the sense of the bill, a 'book' is not a work of authorship, but is a particular kind of 'copy.' Instead, the author may write a 'literary work,' which in turn can be embodied in a wide range of 'copies' and 'phonorecords,' including books, periodicals, computer punch cards, microfilm, tape recordings, and so forth."

Id.

The Copyright Act does not specifically define the relationship between writer and printer, but does address a somewhat analogous, albeit more ambiguous, situation. Some forms of sound recordings are protected under 17 U.S.C. § 102(a)(7). According to the House Report, these recordings "are clearly within the scope of the 'writings of an author' capable of protection." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 56, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5669. The Report considered authorship to apply not only to the performer, but also to the producer responsible for setting up the recording session, processing the sounds and compiling and editing them to make a final sound recording. In some cases, however, the record producer's contribution could be so minimal that the performance is the only copyrightable element in the work.

In questioning the House Report, Professor Nimmer remarks that the solitary act of "setting up the recording session" is "ill-based" for claiming authorship on behalf of the record producer. 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.10[A][b] at 2–146 (1990). Indeed, "this is no more an act of 'authorship' than is the act of one who makes available to a writer a room, a stenographer, a typewriter, and paper." *Id.*

Mechanically transposing an author's expressions or compilations is somewhat analogous to producing a sound recording, although the latter process may require more technical choice and artistic discretion. Significant to the case at hand is Nimmer's comment emphasizing that a party can be considered an author when his or her expression of an idea is transposed by mechanical or rote transcription into tangible form under the authority of the party.

Andrien testified that he expressly directed the copy's preparation in specific detail. His compilation needed only simple transcription to achieve final tangible form. From his description, Carolyn Haines acted as his amanuensis just as does a stenographer in typing material dictated by another person.

On this record none of Haines' activities in any way intellectually modified or technically enhanced the concept articulated by Andrien other than to arrange it in a form that could be photographed as part of the embodiment process. Moreover, when A & H employees printed the maps they did not change the substance of Andrien's original expression.

Based on the statute, its legislative history, caselaw and academic commentary, we conclude that the activities to which Andrien testified qualified him as an author

within the copyright statute's requirements. In the present procedural posture of this case, it was therefore inappropriate to enter summary judgment.

Because the case must be remanded for further proceedings, we point out that if the evidence establishes that Haines was more deeply involved in the preparation of the map than Andrien's testimony indicates, she may perhaps be a joint author. *See* 17 U.S.C. § 201(a). The 1976 Act defines a joint work as one "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. At this point we need not decide whether each author of a joint work must make an independently copyrightable contribution. *See generally* 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 6.07 at 6–18.2 (joint authors need not make independently copyrightable contributions); *see also Community for Creative Non–Violence v. Reid*, 846 F.2d 1485, 1497 (D.C.Cir.1988) (dicta), *aff'd on other grounds*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). *But see Ashton–Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir.1990) (joint authorship requires each author to make independently copyrightable contribution).

A finding of joint authorship would not, in itself, result in dismissal of Andrien's claim. As a co-owner, he would still be entitled to claim a copyright in the individual whole of protected work. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493 (11th Cir.1990).

The judgment of the district court will be reversed and the case will be remanded for further proceedings consistent with this opinion.