Scott A. ECKERT, d/b/a
"Exo", Plaintiff,

v.

HURLEY CHICAGO COMPANY,
INC., Defendant.

No. 83 C 8340.

United States District Court,
N.D. Illinois, E.D.

June 11, 1986.

Robert E. Knechtel, Basil E. Demeur, Knechtel, Valentino, Demeur & Dallas, Chicago, Ill., for plaintiff.

William I. Goldberg, Edward S. Berger, Antonow & Fink, Howard B. Prossnitz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This copyright case is before us on the defendant's motion for summary judgment.

Alternatively, defendant requests that we order plaintiff to submit to further deposition pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. For the reasons given below, defendant's motions are denied.

## FACTS

During the time period relevant to plaintiff's complaint, plaintiff Scott Eckert sold water filters manufactured by Hurley Water Systems. Defendant Hurley Chicago Company, Inc. ("HCI") apparently also sells Hurley Water Systems' filters.[1] In his complaint, Eckert alleges that he created and wrote a brochure entitled "Water Pollution is a Problem" as a selling tool for his salesmen to facilitate solicitation of sales for water purifying and filtering systems. Eckert explains in his deposition testimony more specifically that the brochure was designed to sell the Hurley filter. Eckert Dep. at 30.

The brochure consists of eleven pages. On each page are large drawings with a few phrases of print in various sizes. For example, the first page has a global drawing of the western hemisphere, over which is printed:

Water Pollution is a Problem.
—State
—Country
—World
It's in the News
—Newspapers
—Magazines
—Radio
—Television
It has Reached a CRITICAL Level
There is No New Water On Earth
Complaint, Exh. A.

Eckert alleges that he received a certificate of registration for his brochure from

---

1. HCI claims that Eckert was one of HCI's distributors, citing Eckert's Dep. at 6–7. But at these pages in the deposition, Eckert states that he worked for "Hurley Water Systems of Florida." He also states that he did not work for "Hurley," but rather bought Hurley products from Icon, which Eckert identifies in a memorandum of law as an HCI distributor. Eckert Depo. at 29; Plaintiff's Reply to Defendant's

Memorandum of Law in Support of Defendant's Motion for Summary Judgment, or, in the Alternative, to Compel Discovery and for Sanctions at 1. HCI has submitted no evidence as to the relationship between it and Hurley Water Systems of Florida, or Icon, or Eckert, and we cannot discern from the record what the exact contours of Eckert's relationship with HCI were.

the Registrar of Copyrights, dated October 28, 1981. He claims that HCI has infringed upon this copyright by printing and distributing a document virtually identical to his brochure. His complaint consists of two counts. Count I is based on 17 U.S.C. §§ 101 *et seq.;* in Count II, Eckert claims that HCI's conduct amounts to an unfair trade practice and unfair competition. As relief, Eckert requests an injunction, an accounting, punitive damages, a statutory increase in damages pursuant to 17 U.S.C. § 504(c)(2) and attorney's fees.

In response, HCI argues that its president, Gus Losos, contributed greatly to the creation of Eckert's brochure, and, therefore, as a joint author, HCI has not infringed upon Eckert's copyright, but rather is entitled to an accounting for its share of the profits of the brochure's sales.

In deposition testimony, Eckert has admitted that he obtained a "picture" of a cross-section of the Hurley water filter from Losos, and that Eckert had his artist make a drawing of the filter for the brochure based on Losos' "picture." Eckert Dep. at 37. In an affidavit, Eckert states that Losos gave him a "photograph" from which Eckert's artist drew the cross-section. Eckert Affid. ¶ 4. Additionally, above the drawing of the filter in the brochure, Eckert placed Hurley's trademark and slogan in quotation marks. Complaint, Exh. A at 11.

## DISCUSSION

Before examining the merits of HCI's two motions, one aspect of copyright law should be made clear. When a work involves a compilation of facts, the compiler does not copyright the facts, but only his organization of those facts. *See Rockford Map Publishers, Inc. v. Directory Service Co. of Colorado, Inc.,* 768 F.2d 145, 148 (7th Cir.1985). In *Rockford,* the court held that the plaintiff's plat maps were copyrightable under 17 U.S.C. § 103(a). While the plaintiff could not copyright the facts, that is, the information in the deeds on file in the county courthouse, it could copyright "the arrangement of that information on a plat map." *Id.* The court continued, "The

contribution of a collection of facts lies in their presentation, not in the facts themselves. The collector may change the form of information and so make it more accessible, or he may change the organization and so make the data more understandable...." *Id.* at 149.

Therefore, it is not the facts in Eckert's brochure which are copyrightable, but the arrangement and presentation of these facts.

## Motion for Summary Judgment

Eckert has described Losos' contribution to his brochure as follows. Eckert created a rough draft of his brochure, drawing the facts contained in the brochure from "many sources of information," such as newspaper and magazine articles. Eckert Dep. at 32–33, 39, 48. Eckert then showed the draft of Losos, who commented on its content. *Id.* at 34. Aside from use of Losos' "picture" of the Hurley filter, Eckert did not obtain his information from Losos, and he did not change any of the contents of the brochure based on Losos' comments. *Id.* at 35; Eckert Affid. ¶¶ 3–6.

### What material do we examine?

HCI claims that Eckert gathered the bulk of his material from Losos, and not from his own library research as Eckert claims. Specifically, HCI has submitted what it states were the contents of Losos' files, and has noted the similarities between the materials in these files and the information and phrasing in Eckert's brochure. Some of these materials appear to be summaries of information from newspapers and magazines, compiled by an unidentified source (e.g., Appendix to Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Exh. 2, Defendant's Exhs. A–F, M, Z, DD). Other portions of the file appear to be clippings from newspapers and magazines (e.g., *id.,* Defendant's Exhs. G–L, N–Y, AA–BB).

HCI argues that Eckert's deposition testimony and affidavit, in which he states that he did not obtain his information from Losos (and, therefore, Losos' file) do not

raise a disputed issue of fact because Eckert has not identified where he did obtain his information. It characterizes Eckert's statements as naked denials, unable to overcome HCI's evidence (the submission of Losos' file). We disagree.

The cases which HCI cites to support its position actually indicate why Eckert's statements do raise a genuine issue of fact. First, HCI cites *Home Art, Inc. v. Glensder Textile Corp.*, 81 F.Supp. 551 (S.D.N.Y. 1948). There, the court granted the plaintiff summary judgment. The plaintiff owned a copyrighted reproduction of an oil painting (placed in the public domain); the defendant manufactured scarves bearing a copy of the painting. The plaintiff claimed that the scarves' design was taken from its reproduction; the defendant answered that its copy could have come from the original painting. The defendant could not state this as a fact because it had brought its design from a third party.

The court found that the defendant's answer did not raise an issue of fact because the defendant could have submitted an affidavit from the third party, indicating that the defendant's design had come from the painting itself. *Id.* at 553. In contrast, here, no third party is involved, and the party with knowledge, Eckert, has submitted an affidavit indicating that he did not use Losos' compilations.

Similarly, HCI cites *Higgins v. Baker*, 309 F.Supp. 635 (S.D.N.Y.1969). There, the court denied summary judgment, stating that while an opponent to a summary judgment motion cannot rest on naked denials, under Rule 56(e), the burden is still on the movant to prove that the record demonstrates no genuine issue of material fact. *Id.* at 639. Here, even if we could characterize Eckert's deposition testimony and affidavit as "naked denials," the record shows that Losos himself compiled his information from various publications easily obtainable by the public. This is not a case like *Home Art*, involving one painting, where the source of the defendant's design had to be either the original painting or the plaintiff's reproduction. Rather, this case involves a compilation and arrangement of facts, and the source of these facts is not necessarily Losos.

Therefore, on this motion for summary judgment, we will look only at the material which Eckert admits he took from Losos to determine whether the brochure constituted a "joint work."

**Does the material demonstrate "joint work?"**

■ Eckert argues that Losos' contribution was so minimal that the brochure cannot constitute a "joint work."

A "joint work" is defined by statute as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The bulk of litigation pertaining to joint work focuses on what sort of intent is required to create such a work, since intent is the "touchstone" in determining whether a work meets § 101's definition. H.R. Rep. No. 1476, 94th Cong., 2d Sess. 120, *reprinted in* [1976] U.S. Code & Admin. News, 5659, 5736. *See* M. Nimmer, 1 Nimmer on Copyright, §§ 6.02–06 (1985). These cases typically involve situations in which an author creates his or her work, and subsequently another author adds to that work. The narrower and better view is that each author when making his or her contribution must intend it to constitute a part of a total work to which another shall make (or has already made) a contribution. *Id.* at § 6.03, pp. 6–7, 6–8, citing *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266 (2d Cir.1944), and *Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 161 F.2d 406 (2d Cir.1946), *cert. denied*, 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837 (1947) (the *"Melancholy Baby"* case). One court, ruling prior to enactment of the current version of § 101, found that the original author need not intend at the time he creates his contribution that another author's work be joined with his, if the original author or the author's assignee subsequently intends such a fusion. *Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 221 F.2d 569 (2d Cir.), *modified on*

*rehearing,* 223 F.2d 252 (2d Cir.1955) (the *"Twelfth Street Rag"* case). Nimmer disapproves of this extension, and cites legislative history to support his view that the current version of § 101 rejects the extension. 1 Nimmer § 6.03 at 6–8. *See also* H.R. Rep. No. 1476, *reprinted in* [1976] U.S. Code & Admin. News at 5736 ("a work is 'joint' if the authors collaborated with each other, or if each of the authors prepared his or her contribution with the knowledge and intention that it would be merged with the contributions of other authors as 'inseparable or interdependent parts of a unitary whole.' The touchstone here is the intention, at the time the writing is done, that the parts be absorbed or combined.... ").

A case modifying the doctrine of the *Twelfth Street Rag* case held that a subsequent intent to collaborate is sufficient to create a joint work only if the later author's contribution is more "substantial" and "significant" than what occurred in *Twelfth Street Rag* (minimal addition to the earlier composer's music and lyrics). *Picture Music, Inc. v. Bourne, Inc.,* 314 F.Supp. 640 (S.D.N.Y.1970), *aff'd on other grounds,* 457 F.2d 1213 (2d Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972) (the *"Three Little Pigs"* case). A line of cases on de minimis contributions has developed from this statement in the *Three Little Pigs* case.

One group of cases involves architectural drawings. It is generally held that a home buyer who makes suggestions to his architect, or who submits sketches to the architect, is not a co-author of the architectural drawings. *See, e.g., Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.,* 542 F.Supp. 252, 259 (D.Neb.1982); *Meltzer v. Zoller,* 520 F.Supp. 847 (D.N.J. 1981). In *Meltzer,* the court explained that this is because the drawing is not "created" until it is fixed in copy, and the ideas and sketches contributed by the home buyer do not sufficiently constitute fixed expressions of ideas (that is, copyrightable work) to make the buyer a "co-creator." *Id.* at 857. Thus, the court in *Meltzer* seemed to look at the de minimis doctrine from a quality as opposed to quantity point of view: to be a co-author, the party must supply copyrightable expressions. *See also Aitken,* 542 F.Supp. at 259. Subsequent cases have also focused on the quality as opposed to the quantity of a party's contribution. For example, in a recent case involving alleged infringement of a fishing camp brochure, the court found in favor of the defendant, based on his joint work defense. *Fishing Concepts, Inc. v. Ross,* 226 U.S.P.Q. (BNA) 692, 696 (D.Minn.1985). The plaintiff argued that the defendant had only contributed 5–10 percent of the contents of the brochure, making his contribution de minimis under *Meltzer.* The court disagreed, because the type of material the defendant contributed in *Meltzer* had not been copyrightable expression, while the defendant in *Fishing Concepts* had contributed copyrightable pictures and copy to the brochure. *Id.* at 696 n. 6.

Another case examining the quality of an alleged co-author's contribution is *Whelan Associates v. Jaslow Dental Laboratory, Inc.,* 609 F.Supp. 1307 (E.D.Pa.1985). There, the defendant claimed that its officer was co-author of the computer software system the plaintiff accused the defendant of infringing. The defendant claimed as the officer's contributions the idea that an overall program to meet a dental laboratory's needs should be developed; an explanation of the dental operations and methods of the defendant's laboratory; and an explanation of the functions the computer should be able to perform. Additionally, the officer helped design the language and format of some of the screens that would appear on the computer's visual display.

The court found that only the plaintiff authored the system, because the bulk of information and advice provided by the officer "was little more than one would expect from the operator of any business who seeks to have a computer system designed for him"; "[s]uch general assistance and contribution to the fund of knowledge of the author" did not make the officer a creator of any original work, or even a co-author. *Id.* at 1318. Examining § 101's

definition of joint work, the court also appeared to weigh the quantity of the officer's contribution. Specifically, the court found that there was no evidence that the parties intended that the officer's contribution should merge into the final computer system, except perhaps the wording and abbreviations appearing on some of the screens. Citing *Meltzer*, the court found that this contribution was not of sufficient significance to make the officer a co-author. *Id.* at 1319. *See also Aitken*, 542 F.Supp. at 259 (one creative design idea defendant did contribute to work too minimal to make work "joint" under § 101).

Thus, a determination as to whether a work was created jointly involves an examination of both the quantity and quality of the parties' contributions as factors bearing on the ultimate question, intent. While a co-author's contribution need not equal the other author's, at least when the authors are not immediately and obviously collaborating, the co-author's contribution must be "significant" both in quality and quantity in order to permit an inference that the parties intended a joint work. *See Kenbrooke Fabrics, Inc. v. Material Things*, 223 U.S.P.Q. (BNA) 1039 (S.D.N.Y. 1984); 1 Nimmer at § 6.03, p. 6–10.

Here, neither the quantity nor the quality of Losos' admitted contributions implies a contribution of such significance as to grant summary judgment to HCI based on co-authorship of the brochure. Basically, the only contribution Losos made was a picture of the product, the water filter: he provided Eckert either a photograph or a drawing of a cross-section of the filter. Eckert also used the Hurley trademark and slogan, which HCI apparently owns. The brochure is eleven pages long. The first ten pages explain why someone should buy a water filter. The last page shows the particular water filter the author of the brochure wants the reader (or the reader's customers) to buy. The components of that product, that is, the picture, trademark and slogan, do not involve creative additions to the brochure itself. The creative and original aspect of the brochure lies in the arrangement of facts which encourage

the reader to buy a water filter. Losos' admitted contribution involves merely the simple display of the filter which the reader is encouraged to buy. That display contribution is not an inseparable or interdependent part of the whole of the brochure. *See Kenbrooke*, 223 U.S.P.Q. at 1044–45, citing § 101.

Even if it turns out that Eckert did use some materials contained in Losos' file, we doubt that HCI could demonstrate that the brochure was a joint work, because there is no evidence of intent to create a unitary and inseparable work. If HCI proves that Eckert copied Losos' arrangement and presentation of compiled facts, then perhaps Eckert has not created an original copyrightable work, defeating Eckert's infringement claim. But basically, HCI is arguing that Eckert stole Losos' already collected material. It is not claiming that there was a collaboration, followed by Eckert's exclusive usurpation of a jointly created work. There is no indication that when Losos allegedly first compiled his materials, he intended the compilation to become part of a greater whole. As we indicated *supra* at 702–703, the better view is to examine an author's intent at the time he produces his contribution. Even under the *Three Little Pigs'* more liberal view, we doubt that a compiler's desire to be included as author of a subsequent work which relies on his compilation can constitute the necessary intent under § 101, where the compiler had no knowledge of the existence of the subsequent work until after it was completed. Given the lack of evidence as to collaborative intent, summary judgment is denied.

### Motion to Compel

First, we note that HCI has failed to comply with Local Rule 12(d), and that this alone can warrant denial of its motion. *See In re Folding Carton Antitrust Litigation*, 83 F.R.D. 132, 135 (N.D.Ill.1979). Aside from this deficiency, HCI's motion fails because the deposition transcript indicates that Eckert's counsel was fully justi-

fied in instructing Eckert, the witness, not to answer HCI's questions.

HCI asked if it were true that Eckert had not changed his brochure based on any of Losos' comments. Eckert replied that this was true. HCI then asked, "That [the brochure] is 100 percent original with you?" To which Eckert replied, "That is right." Eckert Depo. at 35. Eckert then remembered and explained Losos' cross-section contribution. HCI then asked, "What was wholly original about the cross-section?" And Eckert stated that apparently the drawing in the brochure was not "wholly original." *Id.* at 37. HCI then turned to the first page in the brochure and asked what the source of Eckert's information was for that page. Eckert replied that the information (water pollution is a problem, *see supra* at 700) was common knowledge. HCI then asked whether there was anything on the page "wholly original" with Eckert. Eckert replied affirmatively, explaining that the whole page's format was original. HCI then asked about every phrase on page one, and whether Eckert was the first person to make such statements. Eckert answered again that he was not claiming that the concepts were new to him, but rather, the format in which the concepts were presented. *Id.* at 43. HCI then proceeded to the second page and asked what was "wholly original" on that page.

At this point, Eckert's counsel interrupted and asked what HCI meant by "wholly original." HCI answered by asking Eckert what aspect of page two was "wholly original" with him. Eckert again explained that as to the whole booklet, Eckert was claiming originality in structure and presentation: "The thing that makes it unique, is the way it was put together; the way it was prepared in order to make it an effective presentation." *Id.* at 44. HCI asked again if "any information" on the second page was "wholly original," at which point, Eckert replied that he did not know how else to answer the question. *Id.*

HCI asked the same question again, and Eckert's counsel objected. HCI persisted in trying to ask whether each phrase on page two was "wholly original." Eckert again explained that he put the words and brochure together. HCI responded by asking whether the "thought" in the phrases was "wholly original." *Id.* at 45. Eckert's counsel again objected, explaining that Eckert had answered these questions. To summarize the subsequent examination, HCI continued to attempt to ask whether "anything" on page two was "wholly original"; Eckert again explained that he compiled the information; HCI repeated its question as to what was "wholly original"; and Eckert's counsel finally told Eckert not to answer.

It is clear that Eckert answered HCI's questions numerous times, and that HCI's persistence in asking what was "wholly original" about Eckert's work constituted either deliberate badgering or ignorance of copyright law. Eckert explained numerous times that he had not been the original discoverer of the facts contained in the brochure, but rather had creatively arranged and presented the facts, which he had gathered from various resources, such as periodicals. As we stated earlier, it is the arrangement and presentation, and not the discovery of facts, which is copyrightable by law. *See* 17 U.S.C. § 102(b). Therefore, HCI's questions were irrelevant and harassing.

Contrary to HCI's assertion, *Eggleston v. Chicago Journeymen Plumbers Local Union No. 130,* 657 F.2d 890 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982), does not stand for the proposition that an attorney must permit a deponent to respond to every question asked, no matter how irrelevant or how many times it has been answered before. To the contrary, *Eggleston* states that no "hard and fast rule" can be fashioned to apply to all deposition situations. *Id.* at 902. Refusing to answer questions may in some instances be justified, and Rules 30(d), 37 and 26(f) should be employed in a logical, reasonable and flexible manner to reach a just result. *Id.* at 903.

HCI's motion to compel and for sanctions is denied.[2]

**CONCLUSION**

Defendant's motion for summary judgment and motion to compel are denied. A status hearing is set for June 24, 1986, at 9:45 a.m.

---

**2.** It appears to us that Eckert may be entitled to his reasonable expenses in opposing HCI's motion to compel. *See* Fed.R.Civ.P. 37(a)(4). If Eckert desires to submit a petition, he should be prepared to file it at the status hearing of June 24, 1986. HCI should be prepared to state whether it desires a hearing, as permitted under Rule 37(a)(4).