**DESIGNER'S VIEW, INC., a Florida corporation, Plaintiff,**

v.

**PUBLIX SUPER MARKETS, INC., a Florida corporation, Darren Williams Systems, Inc., a Florida corporation, William Greenwald and Does I–X, jointly and severally, Defendants.**

No. 86–2298–CIV.

United States District Court, S.D. Florida.

April 19, 1991.

Charles G. White, Miami, Fla., David M. Shenkman, Coral Gables, Fla., Shalle S. Fine, Miami, Fla., for plaintiff.

Lee P. Marks, Miami, Fla., for Publix Supermarkets.

Robert I. Speigleman, Edward Guttenmacher, Miami, Fla., for Darren Williams Systems Inc., William Greenwald and Does I–X.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

HOEVELER, District Judge.

This matter came for non-jury trial before the Honorable William M. Hoeveler, United States District Court Judge, on November 7, 1990. After hearing the witnesses' testimony, considering all exhibits in evidence, and reviewing all stipulated facts, the Court makes its findings of fact and enters its conclusions of law.

### FINDINGS OF FACT

1. Plaintiff Designer's View, Inc. ("Designer's View") is a Florida corporation organized and existing under the laws of the State of Florida. At all material times, Designer's View has maintained its principal place of business in Dade County.

2. Defendants Publix Super Markets, Inc. ("Publix") and Darren Williams Systems, Inc. ("DWS") are Florida corporations, at all material times doing business in Dade County.

3. At all material times, Defendant William Greenwald ("Greenwald") has been and continues to be a resident of Dade County.

4. With respect to the matters involved in this action, Defendant DWS acted through various employees, including Defendant Greenwald. Defendant Publix acted through various employees. Plaintiff Designer's View acted through various employees, including Robert Taylor ("Taylor"), its President.

5. Plaintiff Designer's View was engaged in the business of designing and manufacturing certain decorative commercial products, including simulated stained glass panels made by painting acrylic designs on translucent plastic.

6. Several years prior to this action, Defendant Publix had contracted with a Midwest designer, not a party to this action, to produce panels utilizing a simulated stained glass process for decorative displays in the bakery and delicatessen sections of two Publix stores, including a store in the Miami area. As the Midwest designer has since gone out of business, Publix was referred to Designer's View, which prior to the events with which we are concerned, utilized a process similar to that employed by the Midwest designer.

7. Sometime in May or June of 1982, Greenwald, employed at that time as the marketing director of Designer's View, and Taylor met with representatives of Publix to discuss the possibility of Designer's View creating a series of the decorative acrylic panels for promotional use above the produce and bakery sections at a Publix store in Largo, Florida. The director of creative services for Publix, Mr. Dean Hart, suggested the idea of using a cornucopia as the center item for the produce section and drew a rough sketch of a mirror image of two cornucopia with fruits and vegetables flowing across the panels.

For the bakery section, he suggested an array of bakery products.

8. After Publix approved two designs for the panels, the sets of panels, hereinafter referred to as the "Cornucopia of Vegetables and Fruits" and "Breadbasket of Baked Goods," were produced and installed in the Largo store in July 1982. Because of the proximity of the store to water, the mirrored cornucopias were set on a beach background, complete with white sand, blue sky, a lighthouse, gulls and boats. The bakery panels, which were placed upon a background of blue and white with the colors separated by continuous wavy lines, displayed bakery products and a breadbasket containing several baking ingredients.

9. Within a few weeks after the installation of the first set of panels, Designer's View received a second order for panels for another Publix store located in Eau Gallie on the opposite coast of Florida. Although the dimensions were changed to suit the remodeled store, the panels produced and installed were basically identical to those placed in the Largo store.

10. Angel Correa, an artist employed by Designer's View, was instrumental in designing and sketching both sets of panels for Publix. Defendant Greenwald, also employed by Designer's View at that time, observed Correa on several occasions during the preparation of the panels for Publix and was, of course, familiar with the product installed in both stores.

11. On or about April 19, 1983, Plaintiff filed two applications with the Register of Copyrights for the "Cornucopia of Vegetables and Fruits" and the "Breadbasket of Baked Goods" works of art and received Certificates of Registration that evidence Plaintiff as the proprietor, owner, and holder of the copyrights to said works. These copyrights are valid and subsisting.

12. The testimony was in conflict as to whether or not plaintiff's personnel had affixed copyright notices, in the form of gummed labels, to the panels at the times they were shipped to the Largo and Eau Gallie stores. The greater weight of the testimony was that they had not, or at the

very least, they were not on the panels when they arrived at the stores.

13. On or around Thanksgiving of 1982, Greenwald terminated his employment with Designer's View. Once again, the facts are in dispute. The reasons given for the Greenwald departure by Mr. Taylor are quite different from those given by Mr. Greenwald. The differences, however, are relevant only insofar as they affect credibility determinations made in connection with other aspects of the case. After leaving Designer's View, the defendant Greenwald set up his own company by the name of Darren Williams Systems, Inc ("DWS").

14. In April of 1983, Publix contacted Greenwald and DWS about developing additional sets of translucent acrylic panels for use in other Publix stores, and the parties ultimately entered into several contracts for panels. Publix requested DWS to design panels which were similar to those created by Designer's View to the extent that they were to contain the same subject matter of fruits, vegetables and baked goods and were to be created by utilizing the same medium of painted acrylic on translucent plastic. However, Publix required that the DWS panels appear different from the Designer's View panels in several respects, including:

a. The DWS fruit and vegetable panels would not contain a cornucopia. The original design was concentrated at the center of the display, but Publix preferred the fruits and vegetables to be more evenly spaced.

b. Because the prototype design was to be used throughout the state, the seaside motif could no longer be used.

c. "Publix green" and white were to replace the blue and white background previously used.

d. The new panels would not employ the "crazing" of colors as had the old panels. This artistic element exposed the lights used in the backlighting in several places and did not produce the uniform appearance desired by Publix.

15. Artist Correa, who had left his employment with Designer's View in 1983 and had gone to work for DWS, created the basic design for the new panels. His primary duties while at DWS involved designing the acrylic panels for Publix using the same general technique he previously had used while at Designer's View. However, Correa attempted to improve on the previously created panels he had designed while at plaintiff and to incorporate the changes requested by Publix.

16. Over the next four years, a large number of panels were produced by DWS, Correa and several artist assistants for Publix stores. DWS continued to produce panels in the same fashion even after Correa left his employment at DWS. To date, there are approximately 107 Publix stores which have received panels produced by DWS.

17. Having discovered that DWS was producing panels for Publix, Taylor sent both Publix and Greenwald written notice of Designer's View's copyright claim in a letter dated January 6, 1984. As neither party responded and as DWS continued to manufacture panels for Publix, Plaintiff commenced this action against Publix, and Greenwald on November 5, 1986, alleging copyright infringement and violation of Florida's civil theft statute. In March of 1987, Plaintiff added DWS as a defendant under the same theories previously asserted against the other defendants. It added an unfair competition claim. The civil theft claim was abandoned prior to trial.

## CONCLUSIONS OF LAW

18. This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1338(a).

19. Plaintiff's claims against Defendants allege violation of the Federal Copyright Act, Title 17 U.S.C. § 101, et seq., the Landum Trademark Act, 15 U.S.C. §§ 1116 and 1125(a), and the Florida common law of unfair competition. Plaintiff seeks both damages and injunctive relief.

## · COPYRIGHT INFRINGEMENT

■ 20. In order to prove a claim of federal copyright infringement, a plaintiff must show (1) that it owns a valid copy-

right in the artistic work and (2) copying by the defendant. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir.1982); *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1367 (5th Cir.1981).

21. As to the first element, ownership of a valid copyright, Defendants argue that because Defendant Publix is a co-suthor of the "Cornucopia of Vegetables and Fruits" and the "Breadbasket of Baked Goods," Plaintiff cannot establish that it owns a valid copyright in the works. In support of their position that the panels were a collaboration between Plaintiff and Publix, Defendants point to the fact that Publix's Mr. Hart provided a rough sketch of the cornucopia design before it was embodied in the final product created by Designer's View. The Copyright Act provides that "authors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201(a). In other words, co-owners are entitled to claim a copyright in the undivided whole of the protected work. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493 (11th Cir.1990). A work is considered a "joint work" if it is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Although each author's contributions need not be equal either qualitatively or quantitatively, *Community for Creative Non–Violence v. Reid*, 846 F.2d 1485, 1496 (D.C.Cir.1988), *cert. granted*, 488 U.S. 940, 109 S.Ct. 362, 102 L.Ed.2d 352 (1988), each party must have contributed substantially and significantly to the final product in order for co-authorship to exist. *Kenbrooke Fabrics, Inc. v. Material Things*, 223 USPQ 1039, 1984 WL 532 (S.D.N.Y.1984); *Picture Music, Inc. v. Bourne, Inc.*, 314 F.Supp. 640 (S.D.N.Y.1970), *aff'd*, 457 F.2d 1213 (2d Cir.1972). Having heard testimony from both Mr. Taylor, the President of Designer's View, and Mr. Hart of Publix in reference to the issue of co-authorship, the Court finds that there is insufficient evidence to support Defendants' contention that the cursory sketch of the cornucopia by Hart was intended to form an "insepara-

ble or interdependent" part of the produce panels or that it constituted anything more than a *de minimus* contribution. *See, e.g., M.G.B. Homes, supra; Eckert v. Hurley Chicago Co., Inc.*, 638 F.Supp. 699, 703 (N.D.Ill.1986). Moreover, other than the evidence that Mr. Hart suggested that certain bakery products should be incorporated into the panels, the Court has heard no evidence that Hart or any other representative of Publix collaborated in the design of the bakery panels. Accordingly, as the two designs for which Plaintiff obtained a certificate of copyright registration are sufficiently "original" to be entitled to copyright protection under the Act, Plaintiff has established that it has a valid copyright in the "Cornucopia of Vegetables and Fruits" and the "Breadbasket of Baked Goods." *See Toy Loft, Inc.*, 684 F.2d at 824; *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 897 (5th Cir.1972).

22. "Copying," the second element of establishing an infringement, may be shown either by proving that there was a direct copying or by introducing circumstantial evidence that the plaintiff had access to the copyrighted work and that there is a substantial similarity between the copyrighted work and the defendant's work. *Toy Loft, Inc.*, 684 F.2d at 829; *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). As to proof that the DWS panels were a direct copy of the Designer's View panels, the plaintiff has not introduced any evidence to support this theory; indeed, artist Correa in his trial testimony explicitly denied that he used the same pattern or the same color combination formulas in creating the panels for the two companies. He added that he made a conscious effort to produce a different product. Moreover, none of the same source materials were used as models, except to the extent that Correa relied on his own recollection of how a particular fruit or vegetable should look in producing both sets of panels.

23. As to the two-part test for proof by circumstantial evidence, it is un-

disputed that Correa and the other artists working for DWS had access, if they desired, to the Designer View panels, as they were available for anyone to see in the Largo and Eau Gallie stores. However, it is not at all clear that there is a substantial similarity between the two works entitling Plaintiff to prevail on its copyright infringement claim. In considering whether two works are substantially similar, it is important to remember that copyright protection extends only to the particular expression of an idea and never to the thematic concept itself. *Mazer v. Stein,* 347 U.S. 201, 217–18, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954); *Baker v. Selden,* 101 U.S. 99, 102–03, 25 L.Ed. 841 (1879); *Cable/Home Communications Corp. v. Network Productions, Inc.,* 902 F.2d 829 (11th Cir.1990). In other words, while Designer's View may copyright the artist's unique manner of expressing the various fruits, vegetables and baked products, it may not copyright the idea that fruits, vegetables and baked goods are displayed on simulated stain glass.

24. The similarity such as it is, between the work created while Greenwald and Correa were at Designers View and the later work sold by DWS to Public, is one of gross concept. As indicated, it is quite clear there was no direct copying. The "borrowing" if any is in the general nature of the product. Panels were to be created for inclusion in areas not unlike those in which plaintiff's products were placed. Fruits, vegetables and bakery products were to be depicted. At this point, however, the differences are manifest.

 25. The test for determining whether a substantial similarity exists between two works is whether "an average lay observer would find a substantial similarity in the designs, recognizing the copy as an appropriation of the copyrighted work." *Hedaya Brothers, Inc. v. Capital Plastics, Inc.,* 493 F.Supp. 1021, 1023 (S.D. N.Y.1980) (*quoting Concord Fabrics, Inc. v. Marcus Brothers Textile,* 409 F.2d 1315, 1316 (2d Cir.1969)). *Accord Toy Loft, Inc.,* 684 F.2d at 829; *Kamar Intern., Inc. v. Russ Berrie & Co.,* 657 F.2d 1059, 1063

(9th Cir.1981); *Durham Industries, Inv. v. Tomy Corp.,* 630 F.2d 905, 911 (2d Cir. 1980). Because this is an "intrinsic" test, analytic dissection of the works and expert testimony are not appropriate. *McDonald's Corp.,* 562 F.2d at 1164. Rather, the important criteria is whether an ordinary observer regards the overall aesthetic appeal of the copyrighted work and the allegedly infringing work as the same. *Toy Loft, Inc.,* 684 F.2d at 829.

 26. In determining whether substantial similarity exists, it is not generally necessary to show duplication or near identity. *McDonald's Corp., supra* at 1167. However, near identity may be required in a situation where the expression of the works and the idea of those works are indistinguishable. *Id.* This requirement of near identity is especially applicable when, as here, the fact finder is faced with an alleged copying of items in nature. *See, e.g., Streeter v. Rolfe,* 491 F.Supp. 416, 421 (W.D.La.1980); *Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.,* 575 F.2d 62, 66 (3d Cir.1978); *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 (9th Cir.1971). In such cases, there is a strong possibility that the idea and the expression of that idea will coincide because the "expression provides nothing new or additional over the idea." *McDonald's Corp., supra* at 1168. For instance, in *Herbert Rosenthal Jewelry Corp. v. Kalpakian, supra,* the plaintiff sued for infringement of its jeweled bee pin. The court, finding that any similarity between the bee pins of the defendant and the plaintiff was "inevitable from the use of jewel-encrusted bee forms in both," stated that "protecting the expression in such circumstances would confer a monopoly of the idea upon the copyright owner free of the conditions and limitations imposed by the patent law," and thus held that no infringement had occurred. *Id.* at 742.

 27. Considering the case at bar in light of the above standards, and, in particular, noting that the majority of items displayed in the panels are items found in nature or in the bakeries, the Court cannot and does not conclude that the two sets of

panels are substantially similar. Although the subject matter of the Designer View panels and that of the DWS panels are essentially similar and the medium of expression for both is a simulation of stained glass on backlit acrylic panels, these aspects of the artistic work are not among those protected by the Copyright Act. However, that aspect of the artist's work which is protected, the manner in which he creates the fruits, vegetables and baked goods on the acrylic panels, is not substantially similar. In general, the Designer View set of panels uses blue and white as background colors, while the DWS panels uses green and white. The Designer's View panels depict a more realistic approach to the subject matter, with their increased modeling of the individual elements and their sense of spatial perspective; the DWS panels are more stylized and the elements appear to float against the background, with a decreased sense of perspective. The Designer's View panels employ the "crazing" technique not used in the DWS panels, allowing more light come through in the background.

28. A more detailed examination similarly reveals that the two sets of panels are strikingly different. Viewing the produce panels first, the predominant figure of a cornucopia and the technique of mirror imaging displayed in the Designer View panels are entirely absent from the DWS panels. Moreover, every element has been altered in the DWS panels: The carrots have been removed from the cornucopia, splayed against the floating background, changed in arrangement and increased in number. The single head of lettuce has been multiplied three-fold, redesigned and moved to the opposite end of the set of panels. Even the ordinary pumpkin has been changed in color, positioning and number. What appears to be yellow peppers, mangoes and garlic in the Designer's View panels have been eliminated altogether from the later set of panels. The stripes on the watermelons have been changed, as have the color of the stripes and the positioning and arrangement of the melons. Similarly, the grapes, bananas, cherries, pineapples, celery, corn, mushrooms, toma-toes, peppers, lemons, grapefruit and oranges are positioned and arranged in a different manner in the two sets of panels. Moreover, a number of additional items were added to the DWS panels, such as radishes, acorn squash, broccoli, summer squash, cauliflower, green onions, turnips, eggplant, asparagus spears, strawberries, artichokes, honeydew melons and cucumbers, which are absent from the Designer's View panels.

29. Turning to bakery panels, the lack of substantial similarity is equally apparent. The basket in the Designer View panels uses a different weave, shape and type of material than the basket in the DWS panels. The bakery ingredients, all of which are found inside the basket in the Designer's View panels, are different in kind and are moved outside the basket in the DWS panels. Indeed, even the milk bottle, the only ingredient common to both baskets, is different in shape. The dish containing eggs has a different appearance and color in the Designer's View panel than it does in the DWS panel; in addition, one set of panels places some of the eggs outside the dish while the other does not. The Designer's View panels contain a wide variety of items not present in the DWS panels and vice versa. In short, when the two sets of panels are placed side-by-side, it is obvious that their contents differ vastly in type, size, shape, location, color, arrangement and position; this Court does not find them substantially similar in any regard other than their depiction of similar subject matters on simulated stained glass. Consequently, as plaintiff has failed to prove its case by the greater weight of the evidence, its claim for copyright infringement must fail.

## UNFAIR COMPETITION

30. Plaintiff seeks compensatory and punitive damages as well as injunctive relief against Defendants under the theory of unfair competition. A close review of the Amended Complaint reveals that the allegations supporting the unfair competition claim are a nearly verbatim recital of those supporting Plaintiff's copy-

right infringement claim. The Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... are governed exclusively by this title." 17 U.S.C. § 301(a). Thus, where a plaintiff would prevail on his claim for unfair competition by proving the same allegations necessary to prevail on his claim for federal copyright infringement, his state law claim is preempted by the Act. *M.G.B. Homes, Inc.*, 903 F.2d at 1493–94. Accordingly, as Designer's View has failed to introduce any evidence to support its unfair competition claim other than the evidence of alleged unlawful copying introduced to support its infringement claim, the Court finds that Plaintiff has failed to prove its unfair competition claim by the greater weight of the evidence.

## CONCLUSION

31. After a consideration of the evidence presented and the applicable law, the Court finds that Plaintiff is not entitled to recover damages or injunctive relief against the defendants, Publix, DWS and Greenwald under either the theory of copyright infringement or unfair competition. Consequently, final judgment will be entered by separate order in favor of Defendants Publix, DWS and Greenwald and against Plaintiff Designer's View.

DONE AND ORDERED.