AMERICAN ANTENNA CORPORATION, Plaintiff-Appellant, v. AM-
PEREX ELECTRONIC CORPORATION, Defendant-Appellee.

Second District No. 2—89—0131

Opinion filed October 24, 1989.

Anthony S. DiVincenzo, of Campbell & DiVincenzo, of Chicago, for appellant.

Spencer J. Marks and Robert Marks, both of Marks, Marks & Kaplan, of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, American Antenna Corporation (American), appeals from an order of the circuit court of Kane County granting partial summary judgment in favor of defendant, Amperex Electronic Corporation (Am-

perex), on counts III and IV of plaintiff's complaint. In its order, the trial court granted summary judgment on the tort claims raised in counts III and IV and limited plaintiff to breach of contract actions on those counts. On appeal, plaintiff contends that (1) a tort claim for misappropriation of trade secrets may lie even though a contract governs the relationship between the parties, and (2) monetary and punitive damages are available in a misappropriation of trade secrets case. We affirm.

The facts in this case are largely undisputed. On May 20, 1982, Amperex entered into an agreement with AudioMobile Corporation (Audio) whereby Audio would develop and design car stereo components for Amperex and would manufacture a specific quantity of the components for sale by Amperex; Amperex would pay a specific sum for development and design and would pay a per-unit price for each component manufactured. The contract also provided that after Audio manufactured the components specified in the initial purchase order, Amperex could manufacture the components itself or could contract with a third party to manufacture the components using Audio's designs. If Amperex chose to take over the manufacturing, Audio would deliver the designs to Amperex and would assist Amperex in establishing a manufacturing process; Amperex would pay Audio a royalty of 4% of the net price of each component sold.

In September 1982 plaintiff, American Antenna Corporation (American), purchased the assets of Audio at a credit manager's sale. After discussions between the parties, it was determined that American would continue production of the components for Amperex. By this time, the component designs were completed and had been turned over to Amperex, and a certain quantity of the components had been manufactured. Amperex issued new purchase orders reflecting the negotiations between Amperex and American. The new purchase orders contained a provision that American was "not responsible for any agreement signed by AudioMobile." After American encountered problems with production deadlines, the parties agreed that Amperex would pay an "expediting charge" for an accelerated production schedule and the per-unit price of the components would be changed. New purchase orders were issued reflecting these new agreements. Plaintiff apparently completed production of the components required under the modified purchase orders. During March 1983, Amperex began manufacturing the stereo components at its own facility.

The major disputed fact in this case is whether the parties agreed that the royalty provision which was part of the contract between Amperex and Audio was also made part of the agreement between Am-

perex and American. American contends that Amperex agreed to include an addendum to the November 1982 purchase orders reciting the royalty provision of the original contract; Amperex denies that it so agreed. It is undisputed that after Amperex began manufacturing the components, it did not pay American any royalties.

In July 1983 American filed suit against Amperex, alleging that American had fully performed its part of the purchase orders and that Amperex owed American $47,302.56. In its answer, Amperex denied that American had fully performed and denied that it owed American any money.

Amperex filed a counterclaim against American alleging, among other things, that American was using the plans and designs which resulted from the contract with Amperex to manufacture stereo components to compete with Amperex, and, therefore, American was breaching its fiduciary relationship with Amperex. Amperex sought, among other things, a declaration that Amperex had the sole proprietary right to use the designs and plans.

Thereafter, American filed its first amended complaint. Count I alleges that Amperex breached its contract with American by failing to pay royalties. Count II alleges that Amperex breached its contract by failing to pay the full amount due for development, design and manufacture of the components. Count III alleges that Amperex's right to use the plaintiff's designs arose from the May 20, 1982, agreement; that this agreement is no longer in effect, having been modified by subsequent purchase and change orders; that Amperex no longer has a legal right to use the designs; and that:

> "[B]y the sales of electronic components incorporating the particular and wholly unique trade secrets, proprietary and confidential information, technology and know-how of plaintiff, American Antenna, while purporting to be the designers and owner of the designs and trade secrets incorporated therein, defendant, Amperex, has knowingly breached the agreements with the plaintiff, misappropriated plaintiff's trade secrets, misrepresented the origin of the products and committed acts of unfair competition against the plaintiff."

Count IV alleges a violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 262) and a violation of section 2 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 312). Plaintiff sought injunctive relief and monetary damages.

Amperex filed a motion for summary judgment on count III; in the alternative, Amperex requested "partial summary judgment that the

damages available under Count III *** are limited to those damages arising out of the breach of the contracts between the parties." Amperex contended that the facts could not support causes of action for misappropriation of trade secrets, misrepresentation of the origin of the products, or unfair competition and that, at most, plaintiff had stated a cause of action for breach of contract. The parties later stipulated that the motion for summary judgment would apply to count IV as well.

In deciding the motion for summary judgment, the trial court found that, although there may be a factual dispute about whether the products involved did include trade secrets, by using the alleged secrets defendant did only what it was contractually permitted to do and did not breach a confidential relationship with the plaintiff or otherwise misappropriate or misuse plaintiff's trade secrets or confidential information; that plaintiff was limited to a cause of action for breach of contract; and that, even if a misappropriation of trade secrets action were to lie in this case, plaintiff's only remedy would be in equity for injunctive relief. The trial court denied the motion for summary judgment but granted the alternative partial summary judgment motion on the tort claims and limited plaintiff to a cause of action for breach of contract.

On appeal, plaintiff first contends that the trial court misapplied the law and the existence of an express contract between the parties does not necessarily preclude a tort claim for misappropriation of trade secrets. Based upon the undisputed facts in this particular case, we determine the tort claim is precluded by the express contract.

■ A trade secret is defined as "a secret *plan* or process, tool, mechanism or compound known only to its owner and those *** to whom it is necessary to confide it." (Emphasis in original.) (*Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 385.) A misappropriation of trade secrets occurs when a person acquires or discovers a trade secret by improper means or discloses or uses a trade secret in breach of a duty of confidentiality imposed on him by the nature of his relationship with the owner of the trade secret or reposed in him by the owner in disclosing the information, and the owner of the trade secret is damaged by this improper acquisition, disclosure or use. See *Schulenburg*, 33 Ill. 2d 379; *Syntex Ophthalmics, Inc. v. Novicky* (F. Cir. 1984), 745 F.2d 1423.

■ In this case, the parties dispute whether the designs are trade secrets and whether there was a duty of confidentiality between the parties. However, even if we accept plaintiff's position that there were trade secrets and there was a duty of confidentiality, we conclude that,

as a matter of law, no misappropriation of trade secrets has occurred. First, there is no allegation that defendant acquired the trade secrets improperly. In the plaintiff's own words, "[Amperex] received plaintiff's trade secrets as part of a contractual arrangement which granted defendant the right to manufacture the stereo components."

Further, even assuming that a duty of confidentiality existed between the parties, none of defendant's acts constitute a breach of that confidentiality. Plaintiff has not alleged that defendant disclosed the trade secrets to a third party or that defendant's manner of using the trade secrets to manufacture the components was inconsistent with the terms of the contract. Defendant's use of the trade secrets was the use specifically contemplated by the contract.

It is apparently plaintiff's position that defendant's breach of contract amounts to a breach of their confidential relationship and, thus, constitutes a misappropriation of trade secrets. We disagree. In a trade secret case, it is not the product or the process that is protected, but the secrecy of it. (*ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 97.) The alleged breach of contract here is the failure to pay royalties and fees. The failure to pay royalties and fees does not have any impact on the secrecy of the plans and designs and does not constitute a breach of confidentiality. Plaintiff has failed to establish an essential element of a trade secret case, and summary judgment was properly entered on that claim. *Taylor v. Hocker* (1981), 101 Ill. App. 3d 639, 641.

■ Essentially, plaintiff is complaining that it did not receive the benefit of its bargain—a harm which is appropriately remedied by bringing an action for breach of contract. (See *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 98.) A party's desire to enjoy the benefit of its bargain is not an interest that tort law traditionally protects. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177.) We conclude, therefore, that the trial court was correct in limiting defendant's cause of action on counts III and IV to breach of contract.

In light of our determination that defendant has failed to establish a misappropriation of trade secrets, it is unnecessary to determine what damages might be available in such an action.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS and DUNN, JJ., concur.