**Joan T. NAPOLI, Plaintiff,**

v.

**SEARS, ROEBUCK AND CO., a corporation, and Keane, Inc., a corporation, Defendants.**

No. 93 C 619.

United States District Court, N.D. Illinois, E.D.

Oct. 5, 1993.

Order Denying Reconsideration Nov. 17, 1993.

Rick Allan White, Chicago, IL, for Joan T. Napoli.

Floyd A. Mandell, Jaye Quadrozzi, Katten, Muchin & Zavis, Chicago, IL, for Sears Roebuck & Co.

*MEMORANDUM OPINION AND ORDER*

ASPEN, District Judge:

Plaintiff Joan T. Napoli brings this action against Sears, Roebuck & Co. and Keane, Inc., alleging copyright infringement, misappropriation of trade secrets, breach of contract and conversion. Presently before the court are (i) Keane's motion to dismiss Counts I and II, for copyright infringement and misappropriation of trade secrets, respectively, to the extent they are directed against Keane, and to dismiss Keane from the action; and (ii) Napoli's motion for partial summary judgment regarding her ownership of a valid and enforceable copyright. For the reasons set forth below, we grant Keane's motion to dismiss and deny Napoli's motion for summary judgment.

## I. Legal Standards

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth* ).

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting

Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

## II. Background

In 1989, Sears decided to develop a computer program designed to improve the quality and efficiency of the services offered by the Home Fashions Department at Sears. For the next year, various Sears employees, led by Melody Villafana, the National Inventory and Systems Manager of Furniture of the Home Fashions Department, worked on the "Sears System." They planned the overall structure of the Sears System, provided the layout and graphic design of the screens and reports to be generated, selected all of the data that was to be included, and designed the layout and presentation of that data. Finally, Villafana developed and introduced new terms necessary for the computerization of Sears' business process.

Because the Sears employees had limited experience working in the DataEase software that had been selected for the Sears System, Villafana contracted with Norrell Services, an outside company, to help complete the programming in August, 1990. Norrell originally sent Richard Francis to assist Sears, but he left Norrell in November, 1990. Norrell then sent the plaintiff, Joan Napoli. She worked with Villafana at Sears until March of 1991, when she was fired from Norrell and left Sears. At that time, the Sears System was still incomplete, and all work on it apparently ceased.

In July, 1991, Napoli contacted Sears and offered to complete the Sears System. Napoli and Sears then entered into an agreement whereby Napoli would complete the Sears System and provide a limited warranty period. In return, Sears agreed to pay Napoli $10,000. Napoli began work on completing the existing system, but claims that in October, 1991, she concluded that the Sears System, as it had been developed, suffered from a fundamental design flaw. She informed Villafana of this fact, and told her that she was considering entirely redesigning the internal structure of the system. Villafana told her not to do so, and informed her that Sears would be under no obligation to her if she did. Sears continued to provide extensive assistance to Napoli; it gave her mock-ups of visual screens and sample reports produced by the uncompleted system, and Villafana and Napoli were in frequent contact.

In January, 1992, Napoli delivered a computer system to Sears, which Napoli claims is the system she developed after the failure of the Sears System. Sears paid her $10,000, pursuant to the July agreement, and Napoli provided the repair assistance that she had promised. However, Sears claims that the system which Napoli provided was never fully functional. The relationship between the two parties began to break down in Spring of 1992, and Napoli ultimately demanded that Sears return her source code, which Sears did. However, Napoli contends that Sears made and retained a copy of the source code, which it provided to defendant Keane, Inc., for the purpose of evaluating it and preparing a derivative version.

## III. Keane's Motion to Dismiss

Keane has moved to dismiss both Count I, for copyright infringement, and Count II, for misappropriation of trade secrets, to the extent that each count is directed toward Keane, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because these are the only claims against Keane, Keane also seeks to be dismissed from the action.

### A. Count I: Copyright Infringement

To establish a prima facie case of direct copyright infringement, Napoli must prove that: (i) she owns a valid copyright; (ii) her work is original; (iii) Keane copied the work; and (iv) a substantial degree of similarity between the two works exists. *See Selle v. Gibb*, 741 F.2d 896, 900 (7th Cir. 1984); *Runstadler Studios, Inc. v. MCM Limited Partnership*, 768 F.Supp. 1292, 1294 n. 4 (N.D.Ill.1991). Although Napoli has al-

leged ownership and originality, and claims that *Sears* copied her computer system, she has failed to allege that *Keane* ever copied the system, or that it created a system that was substantially similar to Napoli's. Instead, she maintains that Sears provided a copy to Keane, and that Keane knew that that computer system had not been developed by Sears, but by an independent software developer. Napoli's complaint thus concludes that Keane was "fully complicitous" with Sears in infringing her copyright. It is clear, however, that these assertions fall far short of alleging that Keane actually copied the computer system. Indeed, Napoli can cite no case which supports her claim that the "complicity" she describes will sustain her cause of action. Accordingly, we find that Napoli has failed to state a claim for direct copyright infringement.

In the alternative, Napoli contends that her complaint supports a claim of vicarious or contributory infringement. Although the parameters of these two theories of infringement are not particularly clear, *see Sony Corp. v. Universal City Studios,* 464 U.S. 417, 435 n. 17, 104 S.Ct. 774, 785 n. 17, 78 L.Ed.2d 574 (1984), it is evident that the allegations in Napoli's complaint support neither claim.

■ In order to state a claim for vicarious infringement, the complaint must allege that: (i) the defendant has the right and the authority to supervise the infringing activity of another; and (ii) the defendant has an obvious and direct financial interest in exploitation of the copyrighted materials. *Hard Rock Cafe Licensing v. Concession Services,* 955 F.2d 1143, 1150 (7th Cir.1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971). The allegations Napoli's complaint do not satisfy either of these elements. She makes no claim that Keane could supervise any activity of Sears, nor does she allege that Keane stood to benefit financially as a result of the infringement. She has thus failed to state a claim for vicarious liability.

■ In addition, she has failed to plead facts sufficient to establish a claim of contributory infringement. In order to demonstrate that Keane was a contributory infringer, Na-

poli must demonstrate that Keane: (i) had knowledge of Sears' act of infringement; and (ii) induced, caused, or materially contributed to that infringement. *See F.E.L. Publications, Ltd. v. Nat'l Conf. of Catholic Bishops,* 466 F.Supp. 1034, 1040 (N.D.Ill.1978); *see also Gershwin,* 443 F.2d at 1162. Nowhere in Napoli's complaint does she allege that Keane was involved in any actual infringement by Sears, much less that Keane induced such infringement. On the contrary, the complaint suggests that Keane only became involved after any infringement by Sears took place. Although the complaint does assert that Keane knew or should have known that the computer system it received from Sears was the product of copyright infringement, knowledge alone is not sufficient to make a party a contributory infringer. *Id.* We therefore conclude that Napoli has failed to state a claim for contributory infringement.

■ However, Napoli claims in her "Memorandum in Opposition to Defendant Keane's Motion to Dismiss" that she can remedy the above failings by alleging facts necessary to state a cause of action against Keane, either for direct or indirect infringement. For example, she asserts that Keane must have actually copied her system in order to evaluate it and prepare a derivative work. Because Keane would itself have then created an identical copy, Napoli asserts, it would be liable for direct copyright infringement. In addition, she claims that Keane derived financial benefit as a result of its activities with Sears regarding the computer system. Napoli therefore asserts that she possesses facts sufficient to state a cause of action.

■ As a general rule, a party may not amend its complaint in response to a motion to dismiss. *Perkins v. Silverstein,* 939 F.2d 463, 470 n. 6 (7th Cir.1991). We are nonetheless mindful of this Circuit's concern about dismissing potentially meritorious claims due to the plaintiff's failure to plead a cause of action in an early complaint. *See Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962 (7th Cir.1992). Accordingly, we dismiss Count I of the complaint with respect to

Keane, but grant Napoli leave to amend the complaint to state a cause of action against Keane.[1]

### B. Count II: Misappropriation of Trade Secrets

■■■■■ The Illinois Trade Secrets Act codified the common law protection of trade secrets in Illinois. *Colson v. Wittel,* 210 Ill. App.3d 1030, 155 Ill.Dec. 471, 569 N.E.2d 1082, 1084, *appeal denied,* 141 Ill.2d 537, 162 Ill.Dec. 484, 580 N.E.2d 110 (1991). Under the Act, misappropriation of a trade secret is defined as:

(1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) disclosure or use of a trade secret of a person without express or implied consent by another person who:

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use knew or had reason to know that knowledge of the trade secret was:

(I) derived from or through a person who utilized improper means to acquire it; or

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

765 Ill.Comp.Stat.Ann. 1065/1–9 (1993). To establish a claim for misappropriation, a trade secret owner must also show that he was damaged by the improper acquisition, disclosure, or use of his trade secret. *See American Antenna Corp. v. Amperex Elec. Corp.,* 190 Ill.App.3d 535, 137 Ill.Dec. 417, 546 N.E.2d 41, 44 (1989).

■■ As above, Napoli has failed to plead the requisite elements of this cause of action. Although she alleges in Count I that Keane knew or should have known that Sears did not own the copyright to the computer system it gave Keane, she makes no reference to Keane's knowledge in Count II, nor does she reallege the facts set forth in Count I. Furthermore, she fails to specifically allege that she has been damaged as a result of any improper acquisition of the computer system by Keane. Indeed, Keane is not even mentioned in the substantive allegations of Count II; its name first appears in the "wherefore" clause. Because Napoli has utterly failed to state a cause of action against Keane for misappropriation of a trade secret, we grant Keane's motion to dismiss Count II, to the extent that it sounds against Keane. As above, however, we grant Napoli leave to amend her complaint to cure the deficiencies therein.[2]

### IV. Napoli's Motion for Partial Summary Judgment

Napoli has moved partial summary judgment pursuant to Fed.R.Civ.P. 56 as to her ownership of a valid and enforceable copyright. Napoli claims that she is the sole author of the computer software application that is at the center of this dispute, and is therefore entitled to summary judgment with respect to the validity of her copyright. Sears, on the other hand, contends that, at most, Napoli is a joint author, since, according to Sears, the System was begun by others and merely completed by Napoli. Sears also argues that, to the extent Napoli wrote new source code, she did so with the benefit of Sears' previous work on the System, as well as the screen and report layouts designed by Sears, and the constant assistance of Villafana.

Under federal copyright law, a "joint work" is defined as "a work prepared by two or more authors with the intention that their

---

1. We note that we are not convinced that Napoli *can* state a claim for contributory or vicarious infringement. Even in her response to Keane's motion, she admits that, "As to the infringing activities, Keane may not have supervised the original copying of the System...." We therefore encourage Napoli to consider carefully whether she can allege facts sufficient to withstand another motion to dismiss.

2. Napoli should, of course, consider all the implications of Fed.R.Civ.P. 11 in determining whether to amend the complaint in an attempt to bring Keane back into the case.

contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101 (1977). Whether summary judgment is appropriate in this case thus rests essentially upon two issues. First, we must consider whether Napoli wrote every line of the source code of the system at issue herself, or whether the application she submitted was merely the completion of the "Sears System" which had been begun by Villafana and other Sears employees.[3] In the event that the entire source code was original with Napoli, we must consider whether Sears' contributions to that process, coupled with the intentions of the parties, were sufficient to make Sears a joint author of the system, or at least sufficient to establish a genuine issue as to joint authorship.

As to the first issue, Napoli has repeatedly asserted that she deleted the existing Sears System in October, 1991 and proceeded to write every line of the current source code herself. Sears' assertions in response are not as clear. Although Sears repeatedly maintains that Napoli's claims of sole authorship are untrue, Sears never actually refutes her assertion that she wrote the entire source code on her own. Indeed, Sears admits that it has never compared the current system with the uncompleted Sears System to see whether any of the source code is the same. Instead, Sears points to the extensive work that went into the Sears System prior to Napoli's involvement, Napoli's original offer to "complete" the Sears System, and the similarity between the screens and reports produced by the Sears System and those produced by the system that Napoli deliv-

ered, as apparent support in contradicting Napoli's assertions regarding authorship of the actual source code.

■ It is possible that, when considered in the light most favorable to Sears, the facts asserted by Sears may support an inference that the source code was not original with Napoli, thus demonstrating a genuine issue of material fact prohibiting a grant of summary judgment. We need not resolve this question, however, because, even if Napoli independently wrote the entire source code, Sears has demonstrated sufficient involvement in that process that we can not say, as a matter of law, that Sears is not a joint author.[4] Rather, as set forth below, we find that a genuine issue exists as to whether Napoli and Sears are joint authors.

■ In order to demonstrate joint authorship, the contributions of the authors do not need to

> be equal either quantitatively or qualitatively.... It would seem, however, that each such contribution must, in any event, be more than de minimis. That is, more than a word or a line must be added by one who claims to be a joint author.

*Words & Data, Inc. v. GTE Communication Services,* 765 F.Supp. 570, 575 (W.D.Mo.1991) (quoting 1 M. & D. Nimmer, *Nimmer on Copyright,* § 6.07 at 6–18.2 (1990)).[5] In *Words & Data,* the plaintiff was a supplier of computer services hired by Sprint to develop business information forms. Words & Data brought an action against Sprint, claiming that Sprint had violated various copyright

---

**3.** We initially note that if the latter is true, then Napoli's claims of sole ownership would likely fail, since the combining of Sears' and Napoli's source code into a single finished application would undoubtedly make the two parties joint authors.

**4.** The contributions to the creation of the system made by Sears essentially include: (i) providing Napoli with all of the reports and text produced by the incomplete Sears System; (ii) providing Napoli with mock-ups all of the screens produced by the incomplete Sears System; (iii) selection and arrangement of all of the data to be included in the system; (iv) numerous conferences, through Villafana, with Napoli regarding development of the system, including weekly conferences over the telephone and in person,

and many evening and weekend meetings; (v) providing Napoli full access to the incomplete Sears System; and (vi) selection and introduction of new terms necessary for the mechanization of Sears' business.

**5.** Some have also argued that the contributions of each author must be separately copyrightable. *See, e.g., Childress v. Taylor,* 945 F.2d 500 (2d Cir.1991); *Ashton–Tate Corp. v. Ross,* 916 F.2d 516, 521 (9th Cir.1990). *But see* 1 M. & D. Nimmer, *Nimmer on Copyright* § 6.07 at 6–18 (1989). The Seventh Circuit apparently has yet to offer an opinion on this subject. We note, however, that Sears' contributions (*e.g.,* the graphic design of the reports and screens) are arguably copyrightable.

and unfair competition laws by reproducing the forms without Words & Data's approval. The court granted Sprint's motion for summary judgment, concluding that Sprint and Words & Data were joint authors of the forms. The court stated: ·

> The undisputed facts show that [Sprint] made some contribution to the "arrangement, layout and graphic design" of the FastFix forms. Moreover, even if [Words & Data] contributed substantially all of the "arrangement, layout and graphic design" of the forms, Sprint has established that it supplied substantially all of the text. Sprint's total contribution to the FastFix forms cannot be regarded as de minimis.

*Words & Data,* 765 F.Supp. at 578. The same is arguably true here; Sears provided the graphic design of both the screens and the reports that the system was to produce, the information that was to be contained therein, the text of the reports, and even developed new terminology to accompany the introduction of the system into Sears' business environment.

Also instructive is *Whelan Associates v. Jaslow Dental Labor.,* 609 F.Supp. 1307 (E.D.Pa.1985), *affd.,* 797 F.2d 1222 (3d Cir. 1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987), in which a computer programmer designed a system to accommodate the business needs of a dental laboratory. Jaslow, the owner of the laboratory, claimed to be a joint author, noting that he had explained in detail the operations and computer needs of his business, set forth the functions he expected the computer to perform, and "helped design the language and format of some of the screens that would appear on the computer's visual displays." *Whelan,* 609 F.Supp. at 1318.˙ The court concluded that Jaslow was not a joint author, since the specifications that he had detailed were merely those that any business would set forth in contracting for a computer system.

---

**6.** Napoli contends that she insisted in October, 1991 that she have complete creative control over the project. Nonetheless, the reports produced by the system she delivered are identical to those produced by the uncompleted Sears System, and the visual screens contain only mi-

Significantly, however, the court separately considered the assistance Jaslow provided in designing "some" of the screens. The court noted that these contributions could arguably have supported a claim of joint authorship, since it was possible that the parties intended to merge the wording and abbreviations on the screens into the computer program as a whole. The court concluded, however, that Jaslow's actual contribution was so insignificant as to˙ be *de minimis.* *Whelan,* 609 F.Supp. at 1319. Here, it is arguable that the graphic design and language contributions of the Sears employees were more than *de minimis,* and thus sufficient to establish joint authorship. Unlike Jaslow in *Whelan,* Sears has demonstrated that it designed *all* of the reports and visual screens that the computer will produce, selected all of the data for inclusion and designed the arrangement of that data, determined and provided all of the formulas for Sears' business processes for inclusion in the system, and developed new terminology for use with the system.[6] The extent of Sears' creative involvement in developing the system establishes a genuine issue of material fact with respect to the authorship of the system, and thus the validity and ownership of the copyright.

This conclusion is further supported by the evidence of the intentions of the parties. As noted above, one element of joint authorship is that the parties intended to merge their respective contributions into a single whole. 17 U.S.C. § 101 (1977). Napoli maintains in her motion that she never intended that any contribution by Sears be merged with her efforts, and that she has repeatedly asserted her claim of sole authorship. However, in letters to Villafana, Napoli has arguably indicated otherwise. For example, in a letter dated April 26, 1992, she stated the following:

> I wish you would reconsider your involvement with this endeavor and not decline so quickly. When I show the system to people and see their eyes light up in disbelief,

nor changes. Furthermore, all of the text has remained the same. As a result, there still exists the inference that Sears' contributions with respect to the system were merged with Napoli's to create a joint work.

I actually feel guilty that you're not there to witness their excitement and hear their compliments. I feel like a thief.

. . . .

... What Roger likes most, hands down, is the Buyers Forecasting. That's what he feels will be the biggest attraction to his prospects and that is your baby, kid, all the way. I could never take credit for what's yours, Mel, and I promise you I never will.

In a letter approximately one month later, Napoli stated, "I don't think you have any idea of what we accomplished, just the two of us in so little time, how far we got." Because the above disputes demonstrate a genuine issue of material fact, summary judgment is inappropriate.

### Conclusions

For the reasons set forth above, we grant Keane's motion to dismiss Counts I and II to the extent they are directed against Keane, with leave to Napoli to amend her complaint. We deny Napoli's motion for partial summary judgment.[7] It is so ordered.

### MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

Napoli has moved for clarification, modification, and/or reconsideration of our rulings on Keane's motion to dismiss and Napoli's motion for partial summary judgment. For the reasons set forth below, Napoli's motion is denied.

### Discussion

#### A. Keane's Motion to Dismiss

Napoli first requests that we modify our statement of the essential elements of a copyright infringement claim. In our original opinion, we stated that in order to establish copyright infringement, a plaintiff must demonstrate: "(i) ownership of the copyright in the complaining work; (ii) originality of the work; (iii) copying of the work by the defendant; and (iv) a substantial degree of similarity between the two works." *Selle v.*

*Gibb,* 741 F.2d 896, 900 (1984). The language in *Selle* is stated without caveat or limitation; it is clearly intended it to be a general test for copyright infringement. Napoli has not asserted that *Selle* has been overruled, or is no longer good law. Because our citation of the law was clearly correct, there is no basis for Napoli's motion.

Furthermore, Napoli's attempts to distinguish *Selle* are utterly unconvincing. In her motion, she states that "these prima facie case elements were used to establish unauthorized copying 'because direct evidence of copying is rarely available,' and the similarity of the works (an alleged infringing musical composition) can be used inferentially to prove 'copying.'" Plaintiff's Motion for Clarification at 2 (quoting *Selle,* 741 F.2d at 901). She then claims that, where there is direct evidence of copying, a plaintiff need only demonstrate ownership of a valid copyright and copying by the defendant.

We first note that Napoli's representations regarding *Selle* are simply incorrect. The *Selle* court acknowledged that direct evidence of copying (prong iii) is often difficult to obtain, but provided an alternate method of proving that prong alone: by demonstrating access and striking similarity. *Selle,* 741 F.2d at 901. Thus, under *Selle,* the four prong test applies generally to cases of copyright infringement, but where there is no direct evidence of copying (prong iii), a plaintiff may prove copying circumstantially. Such a demonstration, however, does not eliminate the requirement that the plaintiff *also* prove the fourth prong, substantial similarity. *See Selle,* 741 F.2d at 901. As a result, regardless of whether the evidence of copying is direct or circumstantial, under *Selle* the plaintiff must also demonstrate substantial similarity. Napoli's arguments to the contrary are simply in error.

Furthermore, at least with respect to the facts of this case, Napoli appears to be making a distinction without a difference. She asserts that Keane infringed her copyright

---

**7.** Napoli also moved for sanctions against Sears pursuant to Fed.R.Civ.P. 11, claiming that Sears' contentions regarding Napoli's ownership of a valid copyright have no basis in fact or law.

Given our resolution of Napoli's motion for partial summary judgment, we deny her motion for sanctions.

by loading the program onto its own computer, which necessarily required copying the work into their computer's memory. *See, e.g., ISC–Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1332 (N.D.Ill.1990). If this is the case, then it must the that the copyrighted work and the infringing work were more than "substantially similar;" they were identical, clearly satisfying the fourth prong. It is therefore unclear to this court why Napoli is so disgruntled with the test enunciated in *Selle.* But regardless of our understanding of Napoli's motives, *Selle* remains good law. Napoli's motion for reconsideration with respect to Keane's motion to dismiss is therefore denied.[1]

**B. Napoli's Motion for Partial Summary Judgment**

Napoli also requests that we definitively address whether a contributor who claims to be a joint author of a work must have made independently copyrightable contributions to the work. In our original opinion, we noted that there is some dispute as to whether this requirement is appropriate, and that the Seventh Circuit has yet to rule on this issue. Memorandum Opinion and Order, October 5, 1993, at 1059 n. 5. However, we felt it unnecessary to reach the issue because Sears alleged sufficient creative involvement in the creation of the system to create a genuine issue as to its joint authorship, regardless of whether an "independently copyrightable" rule applies. Indeed, the support for this position comes directly from the cases which Napoli cites in her current motion.

As noted in our original opinion, the widely-cited case of *Whelan Assocs. v. Jaslow Dental Lab.*, 609 F.Supp. 1307 (E.D.Pa.1985), *aff'd* 797 F.2d 1222 (3rd Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987), originally set forth the notion that contributions like those made by Sears may, if of substantial significance, support a finding of joint authorship. *Whelan,* 609 F.Supp. at 1319. Napoli also points us to *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1086–87 (9th Cir.1989), which concluded that individuals must make copyrightable contri-

butions to a work to qualify as joint authors. However, in *S.O.S.*, the court expressly noted:

> The *Whelan* court considered the client's contributions to the visual displays closer to the sort of creative input necessary for co-authorship, but nonetheless concluded that they were "not of sufficient significance" to make the client a co-author of the program as a whole. Payday does not allege that Goodman contributed to the visual displays of the payroll program.

*S.O.S.*, 886 F.2d at 1087 n. 6 (citation omitted). The *S.O.S.* court thus impliedly accepted *Whelan*'s suggestion that significant creative contributions might make a party a co-author, notwithstanding the court's additional conclusion that a joint author's contributions must generally be independently copyrightable. *See Ashton–Tate v. Ross,* 916 F.2d 516, 521 (9th Cir.1990) (noting *S.O.S.* holding on copyrightability of joint authors' contributions). Because Sears' contributions far exceeded those in *Whelan* and *S.O.S.*, we concluded that they may suffice to establish joint authorship, regardless of whether they were independently copyrightable, or whether such contributions must be independently copyrightable. Therefore, there was, and is, no need to establish a sweeping new rule of law, given the unique facts of this case. Accordingly, Napoli's motion is denied.

Although we are in effect ruling for Sears on this issue, we must comment on Sears' blatant misrepresentations of this court's earlier opinion. Sears first asserts that "the Court recognized that material issues of fact exist as to who authored the source code," block quoting a section of this court's opinion. However, Sears omitted vital portions of the paragraph it quoted. In full, we stated:

> It is possible that, when considered in the light most favorable to Sears, the facts asserted by Sears may support an inference that the source code was not original with Napoli, thus demonstrating a genuine issue of material fact prohibiting a grant of summary judgment. We need not resolve this issue, however, because, even if Napoli independently wrote the entire source

---

1. We decline Keane's request that Napoli be barred from repleading against Keane. Accord-

ingly, Napoli must file an amended complaint, if any, by November 29, 1993.

code, Sears has demonstrated sufficient involvement in that process that we can not say, as a matter of law, that Sears is not a joint author.

Memorandum Opinion and Order, October 5, 1993, at 1059–60 (portions omitted by Sears underlined). The unadulterated version clearly refutes Sears' contention that we found a genuine issue as to authorship of the source code, since we expressly withheld a ruling on that issue.

Next Sears states that "this Court already determined that 'Sears contributions ... are ... copyrightable.'" Although we have no quarrel with the first ellipsis, the second is inexcusable. The quoted portion actually states that "Sears' contributions ... are *arguably* copyrightable." As noted above, we refrained from ruling on this issue since Sears' contributions arguably fall into the "significant creative contribution" category recognized in *Whelan* and *S.O.S.*, which, though possibly noncopyrightable, can support a finding of joint authorship. Even if Sears misunderstood our earlier opinion, it certainly knew that omission of the word "arguably" in its brief dramatically altered the quoted sentence's meaning.

█ Misrepresenting a court's opinion is unwise; indeed, it clearly provides the basis for sanctions under Fed.R.Civ.P. 11. Misrepresenting a court's opinion to the court that issued the opinion goes beyond unwise. It is clear from the manipulative use of ellipses and omissions that Sears was fully aware of what it was doing. We strongly admonish Sears to carefully review all future submissions to this court, and consider itself forewarned that no further distortions of fact or law will be tolerated. Sears may rest assured that we will monitor those same submissions to insure that our warning has been heeded.

### Conclusion

For the reasons set forth above, we deny Napoli's motion for clarification and/or reconsideration. Napoli is to file an amended complaint, if any, by November 29, 1993. It is so ordered.